NEWMAN *v.* ADELSPERGER.

BROKERS—COMMISSIONS—PROMISSORY NOTES—FAILURE OF CONSIDERATION.
>   Where plaintiff had procured a loan as a first mortgage on a building he was planning to erect, but estimated he would require an additional loan, and defendants as brokers procured the execution of a contract between plaintiff and third parties whereby said additional sum was to be placed in escrow to be available "according to the terms and conditions of a certain contract executed by and between" said first and second mortgagees, but said last-mentioned contract was in fact never executed because of disagreement between said first and second mortgagees, and said second loan was never consummated, *held,* that promissory notes executed by plaintiffs to defendants as commission for procuring said second loan were void for failure of consideration.

Appeal from Wayne; Dingeman, J. Submitted June 11, 1919. (Docket No. 20.) Decided July 17, 1919. Rehearing denied December 23, 1919.

Bill by Jacob Newman against H. E. Adelsperger and another for the cancellation of certain notes, and to enjoin an action at law. From a decree dismissing the bill, plaintiff appeals. Reversed, and decree entered for plaintiff.

*A. Joseph Seltzer,* for plaintiff.

*Race, Haas & Allen,* for defendants.

Plaintiff being the owner of a lot on High street in the city of Detroit on which he desired to erect a large apartment building had made arrangements to negotiate a first mortgage upon the land and the building to be erected in the sum of $55,000 with S. W. Straus & Co. It seems to have been estimated

that an additional $20,000 would be required to complete the building according to the plans and specifications. Plaintiff thereupon applied to defendant Adelsperger to secure for him $20,000 upon a second mortgage. Adelsperger advised plaintiff that the sum required could probably be secured if the title to the property was placed in the party making the loan and the rents thereof collected and applied by said party. To these conditions plaintiff agreed and thereupon Adelsperger and his codefendant, Waidlich, applied to Walter T. Bradford and Fred S. Riley for the loan. Bradford and Riley agreed to advance the money, but demanded $5,000 as a fee or bonus on the loan. This sum was subsequently increased to $6,000, the additional $1,000 being paid by plaintiff in lieu of a bond guaranteeing the completion of the building. It was further agreed between plaintiff and defendants that defendants should receive $2,500 for their services in securing the loan. Negotiations having ended satisfactorily two agreements were entered into on the 19th day of September, 1916, the first between plaintiff and Bradford and Riley in the following terms:

"*An Agreement*, entered into this nineteenth day of September, 1916, by and between Walter T. Bradford and Fred S. Riley, of the city of Detroit, Wayne county, Michigan, parties of the first part, and Jacob Newman, of the same place, party of the second part, *Witnesseth:*

"*Whereas*, the said parties of the first part have explicit confidence in the good faith and ability of the second party and no one else, to carry out this contract; and

"*Whereas*, the said parties of the first part are desirous of entering into this contract,

"*Now therefore*, in consideration of the sum of one ($1.00) dollar, the receipt whereof is hereby confessed and acknowledged, and of the mutual undertakings and premises hereinafter obtained, *it is agreed* between the parties hereto, as follows:

"1. The parties of the first part hereby agree to loan and advance to the party of the second part the sum of twenty thousand ($20,000.00) dollars, said sum to be used for the sole and only purpose of the construction of a forty-two suite apartment building on the west forty-five (45) feet of lot two (2), in block one (1), Brush subdivision, of Brush farm, city of Detroit, said lot lying on the north side of High street, and between John R. and Brush streets; the said apartment building to be constructed according to plans and specifications now filed with, and accepted by S. W. Straus & Co.

"2. The conditions precedent to be performed by the said party of the second part, before the said sum of twenty thousand ($20,000.00) dollars, or any part thereof is to be advanced by the said parties of the first part, are as follows:

"(*a*) The said party of the second part agrees to secure a first mortgage upon the above described premises from S. W. Straus & Co., said mortgage loan to be in the principal sum of fifty-five thousand ($55,-000.00) dollars, to bear interest at the rate of six per cent. (6%), payable semi-annually; and upon which mortgage the said S. W. Straus & Co., purposes to issue bonds, and the said party of the second part agrees and covenants that the first maturing bonds of which will not exceed the principal sum of thirty-five hundred ($3,500.00) dollars, and further covenants that they will become due in not less than two (2) years from the date of the said first mortgage, and the other bonds shall become due in the following amounts, and at the following times, to wit:

"Thirty-five hundred ($3,500.00) dollars three years after date.

"Four thousand ($4,000.00) dollars four years after date.

"Four thousand ($4,000.00) dollars five years after date.

"Four thousand ($4,000.00) dollars six years after date.

"Thirty-six thousand ($36,000.00) dollars seven years after date.

"(*b*) The said sum of fifty-five thousand ($55,-000.00) dollars shall, all except an amount of not

more than four thousand ($4,000.00) dollars (the said sum of $4,000.00 being the commission of S. W. Straus & Company for making said loan), be expended in the payment of liens and incumbrances now on the said lot, and for the construction of the said building (before the said parties of the first part shall be required to advance any part of the said twenty thousand ($20,000.00) dollars; and the said parties of the first part shall not advance any of the said sum of $20,000 until the said building is fully completed and ready for occupancy) and all bills are paid (including the accrued interest on the said mortgage to S. W. Straus & Co., from the date of its execution until the said building is ready for occupancy)—with the exception of twenty thousand ($20,000.00) dollars. It is agreed that this will be evidenced by an affidavit of the said party of the second part, and by such other evidences as the said parties of the first part may require.

"If, however, the said parties of the first part are satisfied that the remaining cost of the building will be within the $20,000.00-limit herein stated, they hereby agree to authorize the escrow holder of the said $20,000.00, hereinafter mentioned, to pay out of the said $20,000.00 such sums as may be necessary for the construction of the building; provided, however, that the said parties are satisfied that the remaining cost of the building will at all times be within the balance remaining in the hands of the escrow holder.

"It is further agreed by and between the parties hereto that contemporaneously with the execution of the said mortgage upon the said premises to said S. W. Straus & Co., the said parties of the first part shall place said sum of twenty thousand ($20,000.00) dollars in escrow, with the Peoples State Bank, of Detroit, Michigan, according to the terms and conditions of a certain contract executed by and between the said parties of the first part, and S. W. Straus & Co., and, when such money is placed in escrow, the said party of the second part agrees to immediately execute and deliver to the said parties of the first part, as tenants in common, a good and sufficient warranty deed, with full covenants, etc., of the above described

property, free and clear of all encumbrances or liens whatsoever, except the said mortgage of fifty-five thousand ($55,000.00) dollars to S. W. Straus & Co., or the trustee of said mortgage.

"*It is further agreed* by and between the parties hereto that when the title to the said premises passes to the said parties of the first part, as aforesaid, the said parties of the first part may and shall take full and complete charge of said property, and the said Walter T. Bradford shall collect all rentals therefrom, and shall pay all taxes, repairs, insurance, and other expenses of operating the said building therefrom, and shall receive as his compensation for his said service, a monthly commission of six per cent. (6%) of all the gross rentals so collected.

"*It is agreed* by the said parties hereto that all the rentals collected from the said property shall be applied first to commissions, then to insurance, taxes, and all other expenses incidental to the operation of the said property, then to the payment of interest and principal of the first mortgage hereinbefore mentioned, as the same shall become due, and the residue shall be applied monthly by the said Walter T. Bradford on the amount owing to the said parties of the first part by said second party, as more fully, appears in the next paragraph hereof.

"*It is further agreed* by and between the parties hereto, that when the said party of the second part shall pay, or cause to be paid from the rentals as aforesaid, or otherwise, to the said parties of the first part, the sum of twenty thousand ($20,000) dollars and interest thereon at the rate of six per cent (6%) from the date hereof, payable monthly (the balance to be applied on principal by the said Walter T. Bradford) and that when, in addition, and subsequently thereto, the said party of the second part shall pay, or cause to be paid, from the rentals as aforesaid, or otherwise, to one H. E. Adelsperger, the sum of eighty-five hundred ($8,500.00) dollars, in payment of certain notes now held by the said H. E. Adelsperger, that then the said parties of the first part, their heirs or assigns, will reconvey the said premises to the said party of the second part by quitclaim deed, and that

at such time the said Walter T. Bradford shall cease making the rental collections as aforesaid.

"The said notes now held by the said H. E. Adelsperger aggregate, as aforesaid, eighty-five hundred ($8,500.00) dollars, and are more certainly described as follows, to wit:

"Note 'A' dated the same date as this instrument for six thousand ($6,000.00) dollars, payable in two years from the date hereof;

"Two notes each marked 'B' of even date herewith, one for two hundred ($200.00) dollars and one for three hundred ($300.00) dollars, payable on or before four (4) months after date thereof;

"Two notes each marked 'C' of even date herewith, one for two hundred ($200.00) dollars and one for three hundred ($300.00) dollars, payable on or before seven (7) months after date thereof.

"Two notes each marked 'D' of even date herewith, one for two hundred ($200.00) dollars, and one for three hundred ($300.00) dollars, payable on or before thirteen (13) months after date thereof.

"Two notes each marked 'E' of even date herewith, one for two hundred ($200.00) dollars, and one for three hundred ($300.00) dollars payable on or before nineteen (19) months after date thereof.

"Two notes each marked 'F' of even date herewith, one for two hundred ($200.00) dollars and one for three hundred ($300.00) dollars, payable on or before twenty-five (25) months after date thereof.

"Each of said notes marked A, B, C, D, E, F, shall bear interest after maturity at the rate of six (6) per cent. per annum, payable semi-annually.

"*It is further agreed* by and between the parties hereto that the said apartment building shall be constructed and erected and ready for occupancy on or before the first day of May, next, and it is further agreed that time is hereby made, and is of the essence of this contract. If, however, the said parties of the first part should waive one or more breach of time specified in this contract, such waiver shall not be construed to apply to any subsequent breaches thereof.

"And all of the said parties hereto hereby mutually agree that this said contract is not to be placed of record.

"*In witness whereof,* the parties to this agreement have hereunto set their hands and seals the day and year first above written.
"Signed, sealed and delivered in presence of:
   "WILSON W. MILLS.

| | |
|---|---|
| "WALTER T. BRADFORD | L. S. |
| "FRED S. RILEY | L. S. |
| "JACOB I. NEWMAN | L. S." |

The second between plaintiff and defendant as follows:

"*An Agreement,* entered into this 19th day of September, A. D. 1916, by and between H. E. Adelsperger, of the city of Detroit, county of Wayne and State of Michigan, party of the first part, and Jacob Newman, of the same place, party of the second part, *Witnesseth:*

"*Whereas,* the said party of the first part has spent a great deal of time and effort in attempting and in securing a certain loan from one Walter T. Bradford and one Fred S. Riley, to the said party of the second part; and

"*Whereas,* the said party of the second part had but slight security to offer any parties produced by the said party of the first part,

"*Now therefore,* this agreement *Witnesseth:* That, *whereas* the said party of the first part has secured for the said party of the second part a loan of twenty thousand ($20,000.00) dollars, bearing six (6) per cent. interest only, from the said Walter T. Bradford and Fred S. Riley,—the said party of the second part *does agree,* when a contract is signed with the said Bradford and Riley for the payment of the said twenty thousand ($20,000.00) dollars, to execute eleven good and sufficient promissory notes, payable to the said party of the first part, or order, in the following forms and denominations, to wit:

"Note 'A' in the principal sum of six thousand ($6,000.00) dollars, dated the 19th day of September, 1916, and payable on or before two (2) years from its date;

"Two notes each marked 'B' of even date herewith, one for two hundred ($200.00) dollars and one for three hundred ($300.00) dollars, payable on or before four (4) months after date thereof.

"Two notes each marked 'C' of even date herewith, one for two hundred ($200.00) dollars and one for three hundred ($300.00) dollars, payable on or before seven (7) months after date thereof.

"Two notes each marked 'D' of even date herewith, one for two hundred ($200.00) dollars and one for three hundred ($300.00) dollars, payable on or before thirteen (13) months after date thereof.

"Two notes each marked 'E' of even date herewith, one for two hundred ($200.00) dollars and one for three hundred ($300.00) dollars, payable on or before nineteen (19) months after date thereof.

"Two notes each marked 'F' of even date herewith, one for two hundred ($200.00) dollars and one for three hundred ($300.00) dollars, payable on or before twenty-five (25) months after date thereof.

"Each of said notes marked A, B, C. D, E, F, shall bear interest after maturity at the rate of six (6) per cent. per annum, payable semi-annually, in payment for his services of securing the said loan as aforesaid and for no other purpose.

"*In witness whereof*, the parties to this agreement have hereunto set their hands and seals the date and year first above written.
"Signed, sealed and delivered in presence of:
        "WILSON W. MILLS,
        "ELVIRA E. MCFAWN.
                        "H. E. ADELSPERGER    L. S.
                        "JACOB I. NEWMAN    L. S."

The agreement between plaintiff and Bradford and Riley provides:

"*It is further agreed* by and between the parties hereto that contemporaneously with the execution of the said mortgage upon the said premises to said S. W. Straus & Co., the said parties of the first part shall place said sum of twenty thousand ($20,000.00) dollars in escrow with the Peoples State Bank, of Detroit, Michigan, *according to the terms and conditions of a certain contract executed by and between the said parties of the first part, and S. W. Straus & Co.*"

While it appears that the mortgage to S. W. Straus & Co. had been executed at the time these agreements

were made, no agreement between Bradford and Riley and Straus & Co. had in fact been made although it was so recited in the contract. When Bradford and Riley attempted to agree with Straus & Co. upon the terms of the said contract they found they were unable to do so. The difference between the parties grew out of the possibility that it would cost more than the $55,000 supplied by Straus & Co. and the $20,000 supplied by Bradford and Riley to erect the building. Bradford and Riley insisted that Straus & Co. should pay any possible excess but to this condition Straus & Co. declined to assent, with the result that no contract between Straus & Co. and Bradford and Riley was entered into and no deposit of the $20,-000 was made by Bradford and Riley. In the meantime the $8,500 in notes provided for by the agreement between plaintiff and defendants had been executed by plaintiff and delivered to defendants, who in turn had indorsed $6,000 in value thereof and turned them over to Bradford and Riley, retaining $2,500 thereof as their agreed commission for procuring the contract. Upon the failure of Bradford and Riley to agree with Straus & Co. the contract between them and plaintiff was by mutual consent canceled and the $6,000 worth of notes then in the hands of Bradford and Riley were returned to plaintiff. The notes aggregating $2,500 remaining in the hands of defendants were not so returned, it being claimed by defendants that when the contract between plaintiff and Bradford and Riley was executed and delivered they had performed the services for which they had been hired and had earned the agreed compensation. Plaintiff filed his bill praying for the cancellation and delivery of the $2,500 worth of notes and for an injunction restraining defendants from commencing any action at law thereon. Upon the hearing the foregoing facts were made to appear without material dispute. The learned circuit

judge who heard the case filed a written opinion in which the following appears:

"From the evidence presented I am satisfied that the defendant procured Bradford and Riley, who were ready, able and willing to make a loan on the terms required by the plaintiff, and that their failure to make the same was the result of no fault either upon the part of Bradford and Riley or the defendants in this case. It is my judgment that the defendants in this case earned their commission when the contract of September 19, 1916, was signed in which Bradford and Riley agreed to make the loan to the plaintiff upon the terms and conditions as then required. Under this view the defendants would be entitled to their commission notwithstanding that subsequently the deal was not consummated because of new conditions imposed by the plaintiff or some one in his behalf,"

—and entered a decree dismissing the bill.

BROOKE, J. (*after stating the facts*). It is the first contention of plaintiff, appellant, that a different conclusion should have been reached by the learned circuit judge because there has been a complete and total failure of consideration for plaintiff's agreement to pay the commission or the notes evidencing that promise. A critical examination of the contract between the plaintiff and Bradford and Riley, viewed in the light of the testimony in the case, convinces us that defendants never secured for plaintiff a contract with Bradford and Riley by the terms of which they were definitely, and at all events, bound to loan to plaintiff the $20,000. The contract in evidence recites that Bradford and Riley shall place in escrow the $20,000—

"according to the terms and conditions of a certain contract executed by and between the said parties of the first part and S. W. Straus & Co."

The testimony is clear and undisputed that no such contract between Bradford and Riley and Straus &

Co. was executed at the time plaintiff entered into his contract with Bradford and Riley. It is evident that it was in contemplation of the parties that such a contract would thereafter be entered into, but nowhere in the contract does plaintiff assume any responsibility with reference to such contract. He does not agree to secure the assent of Straus & Co. to such terms as Bradford and Riley might impose. Bradford and Riley were obligated by the terms of the contract to deposit the money for use only after the building had reached a point when $20,000 was sufficient for its completion. It is in evidence that Straus & Co. did not consent to the making of the deposit upon the terms contemplated in the contract between plaintiff and Bradford and Riley. It seems clear, therefore, that defendants never secured from Bradford and Riley a contract for the loan of $20,000 which the plaintiff could enforce, and, if this is true, defendants never earned the commission for which the $2,500 worth of notes were given them by plaintiff. It is urged on behalf of the plaintiff that the two contracts read together are tainted with usury and therefore unenforceable by any of the parties. The statute, section 5998, 2 Comp. Laws 1915, does not make such contracts unlawful and void or even voidable, but penalizes the lender by denying him the right to collect any interest upon his loan.

The conclusion we have reached, however, with reference to the first contention made by plaintiff renders it unnecessary to critically examine these contracts. We are of opinion that there was a total failure of consideration for the notes given and that the decree of the court below should be reversed and a decree entered in this court according to the prayer of the bill, with costs of both courts.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.