LAWRENCE A. WAGNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 48987.  Promulgated June 29, 1934.

*E. C. Pommerening, Esq.,* for the petitioner.
*F. A. Surine, Esq.,* for the respondent.

### OPINION.

McMAHON: The respondent asserts a deficiency in income taxes for the calendar year 1927 against the petitioner in the amount of $2,382.01.

The petitioner alleges that the respondent erred in refusing to allow as a deduction $15,000 on account of a loss incurred in connection with petitioner's loan business.

The petitioner is an individual, whose address is the Plankinton Building, Milwaukee, Wisconsin.

In the latter part of 1926 the petitioner opened an office in Detroit, Michigan, for the purpose of engaging in the business of lending money. The petitioner invested in such business $15,000, which was paid in three cashier's checks of $5,000 each of a Milwaukee bank in October and November 1926, payable to the order of the Employees Finance Co., the name under which the petitioner conducted its business in Detroit. The petitioner sent additional money to the Detroit office, including an item of rent which was sent after the office was closed. In November 1926 an amount of $645.30 of the $15,000 was used for the purchase of furniture and fixtures for the Detroit office. No deduction for depreciation of such furniture and fixtures was taken by petitioner on his 1927 return.

During 1927 the petitioner was also engaged in the business of making loans, in partnership with one Gifford T. Vermillion, at Seattle and Spokane, Washington; St. Louis, Missouri; Lexington, Ashland, and Paducah, Kentucky; Houston and San Antonio, Texas;

and St. Paul and Minneapolis, Minnesota. He was also engaged in the same business during 1927 at Chattanooga, Tennessee, in partnership with one A. J. Reich, under the name of Central Discount Co.

Loans were made on written contracts, which did not state the rate of interest payable thereunder, but stated the whole amount due from the borrower, principal, or amount of cash loaned, interest, and brokerage charges. The rate of interest charged at the Detroit office was 10 percent a month.

The following statement shows the cash loaned, fees, including interest and brokerage charge, and average rate of fees as shown by petitioner's records.

| Office | Cash loaned | Gross fees | Average rate |
|---|---|---|---|
| Seattle, Wash | $41,089.10 | $15,770.50 | $38.38 |
| Spokane, Wash | 39,373.75 | 12,108.35 | 38.37 |
| St. Louis, Mo | 31,126.00 | 12,829.70 | 41.22 |
| Lexington, Ky | 49,159.25 | 18,608.05 | 37.85 |
| Ashland, Ky | 28,275.25 | 10,249.15 | 36.25 |
| Paducah, Ky | 41,064.50 | 14,788.20 | 36.01 |
| Houston, Tex | 34,215.00 | 13,077.35 | 38.22 |
| San Antonio, Tex | 29,835.45 | 11,258.75 | 37.73 |
| St. Paul, Minn | 13,615.00 | 4,247.65 | 31.20 |
| Minneapolis, Minn | 7,762.50 | 2,859.00 | 36.08 |
| Chattanooga, Tenn | 28,073.50 | 13,126.20 | 46.75 |
| Total | 343,589.30 | 131,922.90 | ---------- |

The average rate shown above was obtained by dividing the amount of fees by the amount of cash loaned.

The petitioner's books of account were kept on an accrual basis. The petitioner's share of the net income from the above listed offices amounted to $21,911.93. In petitioner's income tax return for the year 1927 the following items are also included in the total income reported of $50,862.27:

1. Salaries, Wages, Commission, etc.

      Employees Finance Company, Inc., Baltimore Maryland Corporation_____ $700.00

      Detroit, Mich., Kansas City, Kansas, Moline, Ill., offices_____ 1,400.00

The loan contracts used in Detroit, as well as in other cities, were in printed form but differed as to contents. The form used in the Detroit office consisted of an " Offer to sell account for earned salary or wages " and an "Assignment of earned salary or wages." In the offer the borrower offered " to sell " * * * an interest in an account for salary or wages already earned " and as an inducement to purchase such salary or wages, among other things, warranted that he was over 21 years of age, agreed to execute an " unconditional bill of sale or assignment " of such salary, and to pay reasonable attorney fees and court costs in the event suit became necessary. The assignment was attached to the offer. The borrower in such assign-

ment sold, transferred, and assigned a certain amount " of an account for salary or wages already earned ", and authorized the employer to pay such amount to the " Purchaser." Among other provisions the assignment contains the following: " I am not a debtor to the Purchaser, and the Purchaser assumes all the risk of loss that may now exist or hereafter arise on account of my said employer being or becoming insolvent or bankrupt."

The printed form used in offices other than in Detroit was designated "Assignment." In such assignment the borrower agreed to " assign, sell and transfer * * * all of my said claim, demand and title " against his employer for salary until a stated time and guaranteed that he would earn " the salary hereby sold."

About June 21, 1927, the Detroit office was raided by the office of the district attorney at Detroit and all records, including loan contracts, were confiscated and the office was closed, because the business as operated by the petitioner was claimed to be illegal. The office furniture and fixtures were not confiscated. Loan contracts at such office in the aggregate were over $10,000 and were kept in that office.

W. A. McMahon, employed in the Detroit office, under date of July 2, 1927, wrote a letter to the accountant of petitioner at his Milwaukee, Wisconsin, office in part as follows:

As you no doubt know, all records were confiscated on the 21st and my cash has been all balled up ever since, in fact, each office here is in the same predicament. The raid happened on Tuesday the 21st, in the forenoon, as I was making up the daily report for Monday the 20th, therefore, I believe the last report you received from me was for the 18th.

If you will send me a duplicate daily report sheet for the 18th, showing the cash and bank balance, I will see what I can do towards straightening this thing up.

I will be here until further notice, in case you want to write me.

Under date of July 14, 1927, W. A. McMahon again wrote such accountant at Milwaukee in part as follows:

Will you send me a draft for my salary due tomorrow? Inasmuch as my bank account is closed, it is hard to get a personal check cashed, so, a draft or cashier's check would be much better.

I am asking this because these accounts are NOT paying, therefore, I will barely have enough to pay expenses. They simply will not come to the office, those that promise to, always fail to do so, and the rest plainly tell us to go to * * *. All the offices are in the same fix, and I believe this Better Business Bureau has written all the customers advising them not to pay their accounts, for it is surprising the number of good customers that I thought would come in voluntarily and pay up.

I hope you got in touch with Wag and explained to him just what the situation is. All the boys are gradually leaving town and I do not want to be the one to be caught and made an example of. We have all been surprised that there were no more warrants issued but it is not too late yet,

and from the mysterious telephone calls the different offices are getting, there must be something in the wind.

Wag told me he would stop off here on his return trip and we would dope out the future, and I hope he wont get here too late. If necessary, I could get out of here and meet him either in Milwaukee or Chicago, inasmuch as our rent is paid to the end of this month, then, we could later arrange for the storage of these fixtures and the collection of what notes I have already turned.

I am hoping to collect in enough to carry me, in event I must leave town at once or in a hurry, however, I will leave this to you as you can see by the report just what cash I have on hand and this is not all cash either, as expenses are going along as usual.

\*          \*          \*          \*          \*          \*          \*

P. S. Wag seems to think that he can recover all our records, but to tell the truth, Ralph, these are all shot  \*  \*  \*,  and I doubt if a dime could ever be collected on them. King and Rosenbush are going to let theirs slide and forget them. In fact, any attempt in the future to collect them would result in the Better Business Bureau starting suits for usury.

In his income tax return for the year 1927 the petitioner deducted $15,000 from gross income. The petitioner attached to such return a letter addressed to the collector of internal revenue, stating as follows:

By way of explanation of the $15,000 loss sustained in Detroit, will say that I opened this office on advise of parties who were conducting similar businesses in various states, they having Supreme Court decisions in various states where they were operating legalizing the businesses. There was a campaign carried on by the Better Business Bureau of Detroit in connection with the District Attorney's office there to put these offices out of business and the offices were raided by the District Attorney's office and all records of indebtedness were confiscated. The investment of $15,000 was an entire loss as we were never able to collect any money from these clients as we had no way of knowing who was indebted to us or who had secured the money. And, furthermore, the District Attorney would not allow us to even approach any of these clients for our money if we were able to determine who owed us.

These facts can all be verified through the District Attorney's office at Detroit, who we understand has destroyed all records of these offices that were raided.

I have also sustained a loss of several thousand dollars as attorney fees which I have not included in this loss, which we paid out to attorneys in Detroit to look after our interests.

This is an entirely different line of business than we are conducting, and knowing that they had been conducting this business in other states for a good many years and had also operated in Detroit for several years before I opened this office, naturally led me to believe that the investment would be sound and profitable.

On April 19, 1929, the petitioner wrote a letter to the collector of internal revenue protesting the disallowance of the claimed loss of $15,000 and stated in part as follows:

I am justly entitled to the deduction of this loss of $15,000 for the following reasons:

\*          \*          \*          \*          \*          \*          \*

(b) That the loss was sustained within the taxable year 1927 on the basis that I abandoned my investment after personal investigation and arriving at the conclusion that any attempt at recovery of the investment would require the expenditure of considerable time and effort and the probability of expensive litigation.

(c) That the loss was incurred in my regular trade or business or a transaction entered into for profit. That I have for many years as an individual, in partnership, and as a stockholder and officer of corporations, been engaged in the loan business and my principal income has been derived from this business. * * * Other loan offices were operating on this basis in Detroit and their apparent success induced me to make the investment.

(d) That the loss was clearly incurred in trade or business or a transaction entered into for profit and should be deducted from income derived from my trade or business.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

On May 18, 1929, the petitioner wrote a letter to D. W. Reynolds, internal revenue agent in charge at Milwaukee, Wisconsin, correcting in part the above letter, as follows:

The statement * * * should read as follows, "That the operation of the business in my Detroit, Michigan, office was different from the business in my other offices in that the business consisted of the purchase of an interest in earned salaries and wages together with an assignment of said salaries or wages." These are the actual facts as stated in a conference with your agents and further supported by copies of the form of contract used, which are attached to this letter.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

On August 6, 1931, petitioner wrote the Commissioner of Internal Revenue at Washington, D.C., in reference to such claimed loss, as stated in part as follows:

The business at my Detroit office was continued until June, 1927, showing book gains and losses for the months of this period but no part of the total capital investment of $15,000 was ever recovered by me.

During June 1927, all records located in this Detroit office were confiscated and destroyed by order of the District Attorney for the reason that I had not obtained a license to conduct a loan business.

Since all of my capital investment had been loaned and because of the confiscation and destruction of all records, it was impossible to recover on any of these loans. In fact, the debtors were advised from the office of the District Attorney that they were not liable.

Consequently, I closed this office in Detroit in June, 1927, and none of the assets were recovered by me except a small part of the office furniture not to exceed in value $300. In addition to the capital loss of $15,000.00, I had also advanced a total of $1925.00 which I considered a surplus or revolving fund to be returned to me. Since the item of $1500.00 attorneys fees under date of May 13, 1927 was not allowed as a deduction for tax purposes, my loss was increased by the net balance of $425. which more than offset the small recovery on office furniture.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

No part of the $15,000 invested in the business of the Detroit office by the petitioner has been recovered by him, except that the

furniture and fixtures were not confiscated. There is no other prospect of recovering any of the $15,000.

The petitioner contends that, under section 214 (a) (4) and (5) of the Revenue Act of 1926,[1] he is entitled to deduct from gross income the amount of $15,000 as a loss sustained in 1927 in his business in Detroit, Michigan. He contends that the business conducted by him in Washington, Missouri, Kentucky, Texas, Minnesota, and Tennessee is the same business that he conducted in Detroit, Michigan; that in the conduct of all of them, the rate of interest charged was far in excess of the allowable statutory rate; that the Detroit loss was not incurred from the confiscation of the records of petitioner, but from the impossibility of collecting accounts because of the absence of records and because of the statutes of Michigan, which make it impossible to collect; that, assuming the loan business of petitioner was illegal because usurious in the State of Michigan, as well as in every other state in which he operated, the Detroit loss nevertheless is deductible, as petitioner may offset the illegal loss sustained in Detroit against illegal income derived from usurious loan business in other states; and that he is subject to tax only on the net illegal income derived from such business in all of the states in which he operated.

The respondent contends that the loss, if sustained in 1927, is not allowable because the business of loaning money at usurious rates is illegal in the State of Michigan under its " Small Loan Act " and that the confiscation of petitioner's records by state officials as a means of enforcing the law does not result in a loss allowable as a deduction.

Whether or not the petitioner engaged in the usurious loan business in all or any of the states in which he was engaged in the business of lending money and whether or not such business is legal or illegal in the various states is dependent upon the laws of the various states as construed by the courts thereof. As stated in *Missouri, Kansas & Trust Co.* v. *Krumseig*, 172 U.S. 351, 355:

> Usury is, of course, merely a statutory offense, and Federal courts in dealing with such a question must look to the laws of the states where the transaction took place, and follow the construction put upon such laws by the state courts. *DeWolf* v. *Johnson*, 10 Wheat, 367; *Scudder* v. *Union National Bank*, 91 U.S. 406.

The general statutes of Michigan effective in 1927 provide that a usurious contract is not void, but the defendant shall not be com-

---

[1] SEC. 214 (a) In computing net income there shall be allowed as deductions:
* * *
(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;
(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *

pelled to pay any interest thereon. As stated in *Newman* v. *Adelsperger*, 173 N.W. 351; 206 Mich. 683, usury does not make a contract unlawful, void, or even voidable, but penalizes the lender by denying him the right to collect any interest. However, beside the general law on usury, there has been enacted in Michigan a so-called "Small Loan Act." The Michigan "Small Loan Act" in force in 1927, being No. 317 of the Public Acts, Michigan, 1921, as amended by No. 181 of the Public Acts, Michigan, 1925, provides, among other things, that no person shall engage in the business of making loans of $300 or less and charge or contract for or receive a greater rate of interest than 7 percent except as authorized by the act and without first obtaining a license from the commissioner of the banking department; that any person licensed under the act may make loans not exceeding $300 and may charge, contract for, or receive interest thereon at a rate of not to exceed 3½ percent per month; that contracts of loan in which a greater interest rate is provided for shall be void; and that any person who shall violate the above and certain other provisions of the act shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than $500 or by imprisonment of not more than six months, or by both fine and imprisonment in the discretion of the court.

With the exception of the letter of August 6, 1931, the record does not disclose the law or authority upon which the district attorney confiscated the records of the petitioner. It does appear, however, that, after the confiscation, the borrowers refused to pay the loans. Whether or not they would have voluntarily paid the loans after the confiscation had petitioner been able to recover his records is mere speculation. The rate of interest charged by petitioner was 10 percent a month and, therefore, such loan contracts were void and unenforceable under the Michigan "Small Loan Act." *Michigan Loan Assn. of Jackson* v. *Cahill*, 235 N.W. 182; 253 Mich. 358.

It has been repeatedly held that expenses, such as fines, costs, and attorney fees, arising out of the unlawful operation of business in contravention of state or Federal regulatory statutes, such as safety appliances acts, hours of service acts, antitrust laws and others, which subject those violating such statutes, upon conviction, to fine or imprisonment, or both, are not deductible as ordinary and necessary expenses upon the ground of public policy. *Tunnel R.R. of St. Louis* v. *Commissioner*, 61 Fed. (2d) 166; *Chicago, Rock Island & Pacific Ry. Co.*, 13 B.T.A. 988; affirmed in *Chicago, R. I. & P. Ry. Co.* v. *Commissioner*, 47 Fed. (2d) 990; certiorari denied, 284 U.S. 618; *Burroughs Building Material Co.* v. *Commissioner*, 47 Fed. (2d) 178; affirming 18 B.T.A. 101; *Great Northern Ry. Co.* v. *Commissioner*, 40 Fed. (2d) 372; certiorari denied, 282 U.S. 855;

affirming 8 B.T.A. 225; *Kansas City Southern Ry. Co.*, 22 B.T.A. 949; *Bonnie Bros., Inc.*, 15 B.T.A. 1231; *Atlantic Terra Cotta Co.*, 13 B.T.A. 1289; *Columbus Bread Co.*, 4 B.T.A. 1126; and *Sarah Backer et al., Executors*, 1 B.T.A. 214.

In *Sarah Backer et al., Executors, supra*, wherein attorney fees, and expenses paid by the decedent to defend himself against criminal prosecution for perjury were disallowed as a deduction, the Board stated:

* * * We do not believe that it is in the interest of sound public policy that the commission of illegal acts should be so far protected or recognized that their cost is regarded as a legitimate and proper deduction in the computation of net income under the revenue laws of the United States.

In *Great Northern Ry. Co., supra*, wherein the railroad company claimed to be entitled to deduct certain fines paid in violation of certain Federal regulatory statutes such as the Safety Appliance Act, Hours of Service Act, and others, the Circuit Court of Appeals stated:

* * * The character of these expenditures is such that they should not be regarded as coming within the statutory definition of deductible operating expenses. It is true that they [claimed deductions] arose in connection with the operation of the road, but it is also true that they arose entirely from unlawful operation, prohibited specifically by statutes or regulations. It cannot be that Congress intended the carrier should have any advantage, directly or indirectly, of these penalties.

In *Burroughs Building Material Co.* v. *Commissioner, supra*, which involved fines imposed by the Supreme Court of New York upon the company and its president for participation in a price-fixing agreement and fees paid to a law firm employed to conduct their defense, the court stated that " The disallowance may properly rest upon a refusal to sanction expenditures of such a character as we have here on grounds of public policy."

In our view it is immaterial whether the deduction is classified as an ordinary and necessary expense or as a loss.

Neither is deductible if incurred or sustained in the commission of acts forbidden by statute or in the omission of acts made mandatory by statute, subjecting those guilty of either to fine or imprisonment, or both. In principle, in situations such as we have in the instant proceeding, the same result follows when the deduction of a loss, is involved as when the deduction of an expense is involved. The reasoning which leads to such result as to an expense applies with equal force to a loss.

The petitioner engaged in a business prohibited by the " Small Loans Act " of Michigan. He made loans under contracts which he knew or should have known were void and unenforceable under such

act. In our opinion the instant proceeding is governed by the principle enunciated in the above cited cases and is a loss arising from the operation of a business prohibited by state statutes, subjecting those violating them, upon conviction, to fine or imprisonment, or both, and is not deductible under section 214 (a) (4) and (5) of the Revenue Act of 1926.

Furthermore the Board has held that losses sustained as a result of an illegal transaction are not deductible. *M. Rea Gano*, 19 B.T.A. 518; *U. L. Heide*, 2 B.T.A. 451; *Mitchell M. Frey, Jr. et al., Executors*, 1 B.T.A. 338. Cf. *Lewis D. Beaumont*, 25 B.T.A. 474.

The cases cited by the petitioner, *James P. McKenna*, 1 B.T.A. 326; *Steinberg* v. *United States*, 14 Fed. (2d) 564; and *Edgar B. Terrell*, 7 B.T.A. 773, are distinguishable upon the facts and are not applicable here.

The determination of the respondent in disallowing the loss claimed by the petitioner in 1927 is approved.

Reviewed by the Board.

*Decision will be entered for the respondent.*