LUIS GUTIERREZ and ROSALIE GUTIERREZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gutierrez v. Commissioner
Docket No. 7538-78
United States Tax Court
T.C. Memo 1981-520; 1981 Tax Ct. Memo LEXIS 218; 42 T.C.M. (CCH) 1108; T.C.M. (RIA) 81520; September 21, 1981. Luis Gutierrez and Rosalie Gutierrez, pro se. Guy LaVignera, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the year 1974 in the amount of $ 2,587.45 and an addition to tax under section 6653(a) [1] in the amount of $ 129.37. After concessions by the parties, the issues remaining for decision are: (1) Whether petitioners' gross income from self-employment for the year 1974 should be increased by $ 8,525; (2) Whether petitioners are entitled to a loss deduction for the purchase by them of stolen goods which were later seized by the police; (3) Whether petitioners are liable for self-employment *219 tax in the amount of $ 1,035.85; and (4) Whether petitioners are liable for an addition to tax under section 6653(a) for intentional disregard of rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing their petition, petitioners resided in Hartsdale, New York. During their taxable year 1974 petitioners Luis and Rosalie Gutierrez operated an antique store under the name "Second Hand Rose," principally on a cash basis. Petitioners had two teen-aged children who resided with them during 1974. Petitioners' antique store was conducted principally out of a small rented building. Petitioners also rented out three rooms of their personal residence during 1974. Petitioners timely filed a joint Form 1040 for the year 1974 which showed an adjusted gross income of $ 3,320. Of this amount, $ 320 was reported as interest income and $ 3,000 was reported as profit from their antique and rental business. Petitioners' Schedule SE showed a self-employment tax liability of zero. In computing petitioners' Federal income tax deficiency the Commissioner *220 determined that petitioners' cash expenditures during 1974 exceeded their potential sources of cash available to them for expenditure by $ 8,525. The Commissioner attributed the excess of the expenditures made by petitioners over their available sources of funds to petitioners' failure to report all gross receipts earned by them in their antique business. Those sources of funds which the parties agree were available to petitioners for expenditure during 1974 total $ 20,452. The parties disagree on the amount available to petitioners from a fire insurance settlement in 1973, and on the existence of an alleged business loan. The parties also disagree on the amount of petitioners' expenditures during 1974. Based on the entire record, including petitioners' testimony at trial where believable, we find that petitioners' sources and expenditures of funds during 1974 were as follows: [2]
Sources of Funds
Gross receipts from antique business reported
$ 14,377
Gross rental income
3,840
Decrease in bank account balance [3]
1,792
Interest income on real estate contract
320
Principal received on real estate contract
123
Insurance proceeds available from 1973
2,000
Total sources of funds
$ 22,452 Funds Expended
Personal expenses (other than food and
clothing expenses) [4]
$ 3,610
Food expense
1,820
Clothing expense
300
Business expenses reported
10,284
Business purchases reported
10,894
Total funds expended
[5] $ 26,908 Funds expended for which source
not explained
$ (4,456)
*221 In October of 1973 petitioners received and cashed a check for $ 4,002.43 issued by petitioners' insurance company in settlement of a claim by them for a loss due to fire. Some of the refurbishing necessary because of the fire was performed by Luis Gutierrez and paid for before *222 this check was received and cashed. We therefore find that $ 2,000 of this amount was unavailable for expenditure in 1974. Petitioners did not have the proceeds of a business loan available for expenditure in 1974. [6]
At trial Mr. Gutierrez produced a copy of a police report which contained a list of stolen goods confiscated in a seizure by local police. Petitioners had purchased the goods in April 1973 for resale by them in their business. In June 1974 many of the goods purchased were seized as stolen property and were not returned. Approximately $ 500 of the goods had been sold before the seizure. The purchase agreement contained no allocation of the purchase price to the various goods purchased. Of the $ 5,500 paid for the goods, at least $ 1,500 went to an agent as his commission on the sale. OPINION Respondent determined that petitioners' expenditures during 1974 exceeded their possible sources *223 of funds available for expenditure by $ 8,525 and attributed this difference to the failure by petitioners to report as income all gross receipts received by them in their antique business. Respondent also determined that petitioners are liable for self-employment taxes. An addition to tax under section 6653(a) was also imposed. Petitioners first contend that they reported all income earned by them in their antique business. However, only a few of the items in our findings of fact are in dispute, and in resolving these minor disputes we have relied to a large extent on concessions made by petitioners at trial. Petitioners would have us find that the full $ 4,002.43 which petitioners received as an insurance settlement for a fire loss in October of 1973 was spent by them in 1974. Mr. Gutierrez testified that not a dime of those monies was spent during 1973, despite the fact a good deal of the repair work had been completed that year. Further, Mr. Gutierrez admitted at trial that he did not handle those funds and did not even know where in their home his wife kept them. We reject the contention of petitioners.Our best estimate based on the entire record and as shown in our *224 findings of fact, is that $ 2,000 was spent by petitioners in 1974 of the insurance proceeds they received. This resolves any doubtful points on this matter in petitioners' favor. Petitioners' additional contention of having the proceeds of a business improvement loan available to them during 1974 is totally unsupported by the record. At trial, petitioner Luis Gutierrez testified that the personal expenses for the Gutierrez family during 1974 amounted to $ 4,975, which amount included an allowance for food of $ 1,270 and an allowance for clothing of $ 95. When questioned on the reasonableness of these estimates, Mr. Gutierrez stated that virtually all the food consumed in the Gutierrez household was acquired by appropriating discarded food from refuse bins of local grocery stores and delicatessens. He claimed also that an elderly cleanup man at a local bakery whose name he did not know would also put things out for him. He stated he was able to acquire enough hamburger to feed not only his own family but some of his friends as well. The Gutierrez' diet was not limited to hamburger, however. According to Mr. Gutierrez he was also able to acquire, in the same manner, chicken, *225 fish, shrimp, lobster, cases of eggs and cases of lettuce. He stated that no illness ever resulted from consuming these foods and that none had spoiled when acquired. We find petitioners' explanation of their food estimate incredible. Respondent's estimate of $ 80 per week, however, is high. On the basis of the entire record, we have found petitioners spent $ 35 per week on food and household goods. For a family of four living in New York, $ 1,820 for all of 1974, is not unreasonably high. Petitioners estimated a clothing budget for 1974 of $ 95. Respondent's estimate of $ 988 is again in our opinion high. Our best estimate based on the entire record is that petitioners spent $ 300 for clothing during 1974. Petitioners reported business expenses on their Schedule C of $ 10,284 and inventory purchases of $ 10,984. These were all cash expenditures. Included in inventory purchases were petitioners' auto payments, the principal payments on their home, certain legal fees nd $ 330 paid by petitioners for bail. Our estimate of petitioners' personal expenditures took no account of these expenditures since these personal expenditures were based in large part on petitioners' *226 own estimates and admissions, which they concede included no allowance for the above items. Hence, we find the amounts listed on petitioners' Schedule C were spent by petitioners during 1974, and that by approaching petitioners' expenditure analysis in the manner we have, petitioners' contention that some expenditures have been counted twice is without merit. [7]
Having expended funds for which they had no apparent source, we are compelled to agree with the Commissioner that petitioners failed to report all gross receipts received by them in their antique business. [8] This method of determining unreported income has been approved many times in the past. E.g., United States v. Johnson, 319 U.S. 503 (1942); Giddio v. Commissioner, 54 T.C. 1530 (1970); Burgo v. Commissioner, 69 T.C. 729 (1978); Taglianetti v. United States, 398 F.2d 558 (1st Cir. 1968), affd. 394 U.S. 316 (1969). *227 We find petitioners failed to report $ 4,456 of income from their business for 1974. Petitioners next contend they are entitled to a loss deduction for the confiscation of stolen goods purchased by them. The circumstances surrounding the purchase and confiscation of those goods are at best uncertain. The purchase agreement was the product of petitioners' own typing efforts, and it was not signed by the seller. The only evidence regarding the allocation of the $ 5,500 purchase price that the confiscated goods represented was testimony given by Mr. Gutierrez, whose testimony, generally, was permeated by hyperbole and fabrication. Further, the payment of an agency commission of at least $ 1,500 on a $ 5,500 purchase and the statement by Luis *228 Gutierrez that he had faced criminal charges in relation to possessing these goods leave us with grave doubt whether petitioners truly lacked knowledge of the stolen character of the goods when purchased by them. Holt v. Commissioner, 69 T.C. 75 (1977); Holmes Enterprises v. Commissioner, 69 T.C. 114 (1977); Mazzei v. Commissioner, 61 T.C. 497 (1974); Richey v. Commissioner, 33 T.C. 272 (1959); Wagner v. Commissioner, 30 B.T.A. 1099 (1934); Hopka v. United States, 195 F. Supp. 474 (N.D. Iowa 1961). Petitioners have simply not come forth with credible evidence to carry their burden of proof with respect to an allocation of the $ 5,500 purchase price to the goods actually seized or with respect to their lack of knowledge of the stolen character of the goods at the time of purchase. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Having found unreported income associated with petitioners' business, it follows that they are liable for self-employment tax under section 1401. Additionally, in characterizing petitioners' *229 preparation of their income tax returns as negligent, respondent has been very generous, and we sustain respondent as to the addition to tax for negligence. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, unless otherwise stated.↩
2. We note that even without adjusting the amount given by petitioners as personal expenses, petitioners' expenditures would exceed their possible sources of funds available for expenditure by several thousand dollars.↩
3. The decrease of $ 1,792 is attributable to a checking account held in the name of Rosalie Gutierrez at Chase Manhattan Bank. ↩
4. Personal expenses include the costs of items such as education, recreation, medical costs for Mrs. Gutierrez, home insurance, utilities, telephone and auto costs. The figure used was derived by subtracting the combined costs of food and clothing contended for by petitioners ($ 1,365) from the total amount of personal expenditures petitioners admitted having made ($ 4,975). We have, as the chart indicates, determined that petitioners spent $ 1,820 for food in 1974. ↩
5. The parties stipulated that petitioners paid $ 225 in settlement of a claim against them in 1974, but neglected to include this amount as an expenditure in computing petitioners' unreported income. We have therefore given petitioners the benefit of this oversight by not including it as an expenditure.↩
6. The only evidence offered concerning the existence of petitioners' alleged business loan was a copy of an original purchase money mortgage executed on the purchase of their home several years earlier. We simply did not believe petitioners as to the alleged loan.↩
7. Respondent has of course allowed appropriate deductions for business expenses, including a concession on brief "that petitioners are entitled to an expense deduction of $ 1,003.00 for rental expenses consisting of oil, water and insurance."↩
8. Whether we characterize the omission as being from gross receipts or gross profit is of no import since assuming arguendo↩ that petitioners had costs and expenses associated with this unreported income, these costs and expenses would have to have been included on the expenditure side of the computation of unreported income. Petitioners presented no evidence that the costs associated with these sales were incurred in prior years.