495 A.2d 366

**Solomon FULLER**

v.

**STATE of Maryland.**

**No. 1633, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

July 15, 1985.

Certiorari Granted Oct. 24, 1985.

340

Barbara L. Matthews, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Nicolette Prevost, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Zvi Greismann, Asst. Atty. Gen., Baltimore, Joseph I. Cassilly, State's Atty. for Harford

County, Christopher J. Romano and Gerard S. Comen, Asst. State's Attys. for Harford County, Bel Air, on brief), for appellee.

Argued before BISHOP, ROSALYN B. BELL and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Having been convicted by two judges of the Circuit Court for Harford County of two separate violations of probation, his probation having been revoked in each case and the original sentences having been reimposed, Solomon Fuller, appellant, has appealed to this court, raising as bases for this appeal, several issues:

1. Did the court erroneously admit hearsay evidence?
2. Was Judge Whitfill's finding that appellant either had the monies to pay the fines or engaged in criminal conduct a sufficient basis for revocation of probation?
3. Did the courts err in revoking appellant's probation for failure to pay restitution and court costs?
4. Does reversal of the conviction upon which the revocations of probation are based require reversal of the revocation orders?
5. May probation be revoked solely on the basis of a subsequent conviction which is pending on appeal at the time of the probation revocation?
6. Did the trial judges err by failing to afford appellant his right of allocution prior to sentencing?

For the reasons which will appear hereinafter, we will remand for further proceedings, consistent with this opinion.

On February 16, 1983, following his conviction in the Circuit Court for Harford County, of theft in case No. 8836, appellant was placed on probation, by Judge Cypert Whitfill, for a period of three years in lieu of five years incarceration. Subsequently, on July 15, 1983, Judge Albert Close, of the same court, in respect of separate theft convictions,

in case No. 8891, sentenced him to ten years incarceration, which was suspended in favor of five years probation.[1] The probation conditions in each case included Rule No. 4-Obey all laws and Rule No. 9-Pay restitution and court costs.[2]

Petitions to revoke appellant's probation, for failure to comply with Rule No. 9, were filed in both cases on February 14, 1984. Judge Whitfill conducted hearings on the petition filed in case No. 8836 on March 29, and April 9, 1984 and found appellant guilty of violating his probation. He held the disposition *sub curia*, however, pending decision on another charge for which appellant was awaiting trial.[3] Following the "stet"[4] of this charge, a supplemental petition alleging violation of Rule No. 4[5] was filed, on August 28, 1984, in both cases. Thereafter, on December 21, 1984, a hearing on both petitions was held with Judges Close and Whitfill presiding. At the hearing, the probation agent testified that appellant had not made payments toward costs in case No. 8836 or, despite a promise to do so in September, 1983, the costs and restitution in case No. 8891; that appellant had been incarcerated for a substantial portion of the probationary period; and that when not incarcer-

---

1. In case No. 8891, appellant was convicted of two counts of theft. His sentence was five years imprisonment as to each, consecutive.

2. In case No. 8836, the restitution owed was to be determined. *See Mason v. State,* 46 Md.App. 1, 415 A.2d 315 (1980).

3. Appellant was charged in case No. 9522 with uttering a bad check in connection with the purchase of an automobile. This case was presumably brought pursuant to the provisions of Art. 27 § 141. This case was stetted.

4. "The entry of a stet simply means that the State will not proceed against an accused on that indictment at that time". *State v. Weaver,* 52 Md.App. 728, 451 A.2d 1259 (1982), quoting *Smith v. State,* 16 Md.App. 317, 295 A.2d 802 (1972). *See State v. Jones,* 18 Md.App. 11, 305 A.2d 177 (1973), Md. Rule 4-248 ("The court may indefinitely postpone trial of the charge by marking the charge 'stet' on the docket"). A stet may not be entered over a defendant's objection.

5. This allegation was supported, in part, by the activities and transactions underlying the uttering charge.

ated appellant, though unemployed, looked for work. The probation agent also testified that when the payment plan was agreed upon, appellant indicated that he would have no problem making the payments required because his grandfather had left him some property. A certified copy of the docket entries in case No. 9523, showing appellant's conviction of four counts of "bad checks", was admitted into evidence. Finally, the court took testimony from Deputy Stephen Rathsgeber and Officer Maurice Kerr, both of whom testified as to transactions or activities underlying the "stetted" charge.

Deputy Rathsgeber, over appellant's objection,[6] testified as follows. He was told by David Snyder at Brown's Castle Toyota that appellant purchased a 1980 280Z from Brown's Castle Toyota on August 20, 1983. The salesman told Snyder that appellant paid, by check, $500.00 down. On September 13, 1983, appellant called Snyder and informed him that he had inadvertently written the check on a closed account and that he would send a check for the balance. The $500.00 check was returned by the bank marked, "account closed." This latter information came from "employees"[7] of Brown's Castle Toyota. Rathsgeber identified both the $500.00 check and an invoice evidencing the purchase of the automobile, which, over appellant's objection that they had not been properly authenticated, were admitted into evidence. On cross-examination, Rathsgeber acknowledged that he had no personal knowledge of the check or of the transactions about which he had testified and that,

---

**6.** Appellant's objection was on two bases. First, prior to any testimony by Rathsgeber, he objected to the State's use of any evidence concerning his purchase of an automobile from Brown's Castle Toyota because the State had chosen to place the charges arising out of that transaction on the "stet docket". According to appellant, the use of such evidence would violate due process, and, in any event, he contended that had that case gone to trial he would have prevailed.

When his objection as to use of the stetted charge was overruled, appellant then objected on the basis of hearsay. These objections were also overruled.

**7.** There is no indication in the record as to who these employees were.

because he did not know the appellant, he could not identify appellant's signature. He did acknowledge, however, that the $500.00 check was made good on or about October 12, 1983.

Officer Kerr testified that he saw appellant driving the 1980 Datsun 280Z, described in the invoice admitted into evidence, on October 13, 1983. He then related that, at the request of the assistant state's attorney, he had spoken with a Captain Perry. Over appellant's objection, he related what Captain Perry had told him: the Datsun 280Z was the subject of litigation in the District Court of Harford County on February 7, 1984, the litigants being the Virginia National Bank, the town of Aberdeen and appellant; the vehicle was awarded to the Virginia National Bank; and the court had determined that "$9,751.00 had been developed to be fraud from the Virginia National Bank" by appellant.[8] Kerr, like Rathsgeber, admitted having no first-hand knowledge of the transactions about which he had testified. He had not reviewed the court records, had not been present in court, and, except for having seen Perry reading from a memorandum from the town attorney to the police department, did not know the source of Captain Perry's knowledge.

Following argument of counsel, the trial judges, in separate opinions, delivered their decisions finding appellant guilty of violation of probation. Judge Whitfill ruled:

As to case No. 8836, the matter was before me on March 29, 1984 on a petition for violation of probation. At that time I found the defendant, Mr. Fuller, had violated his probation for failure to pay court costs and restitution, in accordance with his agreement.

I had information before me at that time, even though he claimed to be unemployed, that he in fact had been able to purchase a new car. And I felt that if he had the

---

**8.** As to this latter assertion, appellant specifically objected: "... the court records and docket entries would be the best evidence of this, not some double hearsay testimony by this witness."

ability to purchase a new car, he certainly had the ability to make restitution towards a case in which there previously had been a car theft.

Disposition upon that finding was withheld. And thereafter the State filed a supplemental petition, on which evidence has been offered today.

Again, I reaffirm the finding that the defendant, Mr. Fuller, is in violation of his probation for failure to make restitution and pay court costs. Even though his probation officer is of the opinion that he was unemployed and was unable to make restitution, when in fact he was able to purchase a new car, we have to reach one of two conclusions. Either he had the ability to make restitution or the purchase of the new car was the result of criminal activity.

And so the Brown Castle Toyota in fact received their money. And if Mr. Fuller had any money available, it should have gone towards the restitution in case 8836.

I think the evidence is sufficient to also conclude that he was engaged in criminal activity in writing a check for $500.00 to Brown's Castle Toyota on account that had been closed [sic]. And that as a result of that he, at least in part, received delivery of the Datsun 280Z.

Further, the certified docket entries in case 9523 are sufficient to conclude that he has violated his probation by being involved in criminal activity in writing additional bad checks.

All three of those factors convince me that the probation should be revoked, and that the defendant should be required to serve the sentence previously imposed.

Judge Close then rendered his decision:

All right. With regard to case 8891, I am not going to provide any number of reasons why he should be revoked; simply the convictions in 9523 are sufficient bases for revocation.

So the court revokes his probation in that case and invokes his sentence.

1, 2, 3, 4, 5

Conceding that under *Raines v. State,* 54 Md.App. 543, 458 A.2d 1264 (1983),[9] we held, relying on *Scott v. State,* 238 Md. 265, 208 A.2d 575 (1965), that hearsay evidence is admissible, in a probation violation proceeding, to prove the violation, appellant urges that "[t]he type of hearsay evidence considered in these cases is radically different from evidence admitted in the case at bar." Therefore, he argues that neither *Raines* nor *Scott* permits the use of "unproven and inherently unreliable hearsay allegations of criminal conduct", particularly where, as here, the evidence related to a charge which had been "stetted". The State demurs, arguing that the hearsay evidence was properly admitted and the weight to be accorded it was for the court.[10]

It is correct, as appellant asserts, that the hearsay evidence admitted in this case is significantly different in kind (we add, and extent) than that which was involved in *Raines* and *Scott.* In *Raines,* the evidence objected to was the testimony of a probation agent, not Raines' agent, from records kept by the Department of Parole and Probation in the ordinary course of business. Although we concluded that the testimony, if hearsay, was admissible, we acknowledged that it may well have been rendered admissible by Courts Art., § 10–101.[11] In *Scott,* the hearsay testimony

---

**9.** *Overruled on other grounds, DiPietrantonio v. State,* 61 Md.App. 528, 487 A.2d 676 (1985).

**10.** The State points out, presumably, seriously, that appellant did not "assail" the veracity of the hearsay evidence and that witnesses were available for cross-examination with regard to the reliability of the source of their information. Appellant's objection to the testimony adequately answers the former point. As to the latter, it is difficult to see what more appellant could have done, by way of cross-examination, to undermine the weight of that testimony, than he did.

**11.** § 10–101. Written record.
(a) Definition of "business".—"Business" includes business, profession, and occupation of every kind.

complained of was in the nature of a prior inconsistent statement offered through the testimony of a police officer, when a witness recanted her prior statement given to the police.

In order to revoke probation, it is generally necessary that the State prove that the probationer has not complied with one or more lawful conditions of probation. *Coles v. State,* 290 Md. 296, 429 A.2d 1029 (1981), *Humphrey v. State,* 290 Md. 164, 428 A.2d 440 (1981). "The procedural protections afforded a probationer in a revocation of probation hearing are not equivalent to those afforded at a criminal trial. Formal procedures and the Rules of Evidence are not employed. Finally, before probation may be revoked, the trial court need only be reasonably satisfied that there was in fact a violation of probation." *Dean v. State,* 291 Md. 198, 434 A.2d 552 (1981). *See, Coles, supra, Scott, supra.* Furthermore, a probationer may be found to have violated a condition of his probation requiring him to obey all laws even though he has not been convicted of a crime. *Dean, supra.* "If it is shown by independent, probative evidence, that the probationer had committed a crime subsequent to his probation and the trial court is reasonably satisfied by that evidence that the probationer committed the crime, probation may be revoked on the ground that the probationer violated the special condition of his probation that he obey all laws." *Id.* at 203, 434 A.2d 552.

With this framework in mind, we begin our consideration of appellant's contentions by revisiting *Morrissey v. Brew-*

(b) Admissibility.—A writing or record made in the regular course of business as a memorandum or record of an act, transaction, occurrence, or event is admissible to prove the act, transaction, occurrence, or event.

(c) Time of making records.—The practice of the business must be to make such written records of its acts at the time they are done or within a reasonable time afterwards.

(d) Lack of knowledge of maker.—The lack of personal knowledge of the maker of the written notice may be shown to affect the weight of the evidence but not its admissibility.

*er,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), cases referred to in *Raines.* Before the Supreme Court in *Morrissey* was the determination of the minimum requirements of due process in parole revocation proceedings. The Court developed and set out six factors which are included within such minimum requirements: (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) *the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);* (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be traditional officers or lawyers; and (f) a written statement by the fact finder as to the evidence relied on and the reasons for revoking parole. The Court emphasized that the second stage [12] of parole revocation is not a criminal prosecution; "it is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.,* 408 U.S. at 489, 92 S.Ct. at 2604.

*Gagnon* followed a year later. The Supreme Court held "that a probationer, like a parolee, is entitled to a preliminary and final revocation hearing, *under the conditions specified in Morrissey v. Brewer, supra".* (emphasis added) *Id.,* 411 U.S. at 782, 93 S.Ct. at 1760. With particular emphasis on a probationer's right to present witnesses and to confront and cross-examine adverse witnesses, it noted: (at n. 5, p. 783, 93 S.Ct. p. 1760)

Petitioner's greatest concern is with the difficulty and expense of procuring witnesses from perhaps thousands of miles away. While in some cases there is simply no

---

**12.** The first stage is a preliminary hearing to determine whether probable cause exists to revoke parole.

adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions and documentary evidence.

 *Morrissey* and *Gagnon*, thus, recognize that hearsay evidence, which does not fall within any exception to the hearsay rule and, thus, normally inadmissible in criminal trials, may be admissible in parole and probation revocation proceedings. It is implicit in *Morrissey* and *Gagnon*, however, that such hearsay evidence must be reliable. *United States v. McCallum*, 677 F.2d 1024 (4th Cir.1982); *Prellewitz v. Berg*, 578 F.2d 190 (7th Cir.1978), *Commonwealth v. Rossetti*, 255 Pa.Super. 524, 388 A.2d 1090 (1978), *State v. Charles DeRoche*, 120 R.I. 523, 389 A.2d 1229 (1978), *State v. Marrapese*, 122 R.I. 494, 409 A.2d 544 (1979), *Hill v. State*, 350 So.2d 716 (Ala.1977). *Gagnon's* analysis pertaining to when counsel should be appointed at revocation proceedings lends support to this proposition. These cases also recognize the right of a probationer or parolee, in those proceedings, to confront and cross-examine adverse witnesses. When the right of confrontation conflicts with the admissibility of hearsay,[13] that conflict, as *Gagnon* in particular makes clear, is resolved in favor of confrontation and cross-examination.

This issue, in this precise context, has not been considered by a Maryland court. The issue was potentially before the Court of Appeals in *Dean v. State, supra*. There, at a revocation hearing, a police officer, with no first hand knowledge of the facts and who was not present during the kidnapping trial, but who had personally investigated the kidnapping case, was permitted to recount, over objection,

---

**13.** There is an inherent conflict between the use of hearsay evidence and the right of confrontation because, by definition, hearsay evidence does not afford confrontation. The conflict to which we refer arises when the hearsay evidence is arguably unreliable and is critical to the determination of the ultimate issue.

the underlying facts and circumstances surrounding the kidnapping. His testimony was based on statements made by the victims and by the probationer's co-defendant. Because it found that fundamental fairness required vacation of the revocation, which was based on a conviction later determined to have been invalid, the Court did not consider the probationer's contention that his constitutional right to confrontation was violated when his probation was revoked, at least in part, on the basis of hearsay evidence.[14] Nor was the issue raised in *Porreca v. State,* 56 Md.App. 63, 466 A.2d 550 (1983). There, the witnesses to the events which formed the basis for the violation testified at the revocation hearing; the probationer thus was afforded the right of confrontation.

■ We are satisfied, as we have intimated above, that neither *Morrissey* nor *Gagnon* contemplated, or endorses, the use of hearsay evidence so as to deny, or render totally useless, a probationer's right to confront and cross-examine adverse witnesses. We are likewise satisfied that *Raines* does not paint with so broad a brush. The hearsay in *Raines,* if hearsay it was, was highly reliable evidence and properly admitted. We suggest that *Raines'* scope can only be determined by reference to its facts. We, therefore, hold that in probation revocation proceedings due process minimally requires that when criminal conduct for which, as here, a probationer has not been tried, is alleged as the basis for the probation revocation, hearsay evidence to prove the violation is inadmissible unless the witnesses to such conduct are unavailable or the evidence is otherwise shown to be reliable. *See Baggert v. State,* 350 So.2d 652 (La.1977) ("it is decidedly inappropriate to receive unassaila-

---

**14.** In recognizing that a conviction need not precede the probation revocation proceedings, the Dean Court labeled the evidence necessary to sustain a conviction for violation of probation based on the commission of a subsequent crime, as "independent, probative evidence." That choice of words suggests a sensitivity to the conflict between the use of hearsay evidence in such proceedings and the probationer's right of confrontation.

ble written reports as a sole evidence of the alleged violation"), *Hill v. State, supra* ("cross-examination of only Officer Conway, who had no first hand knowledge of the factual material in the report, amounted to nothing more than an exercise in futility. Thus, appellant was denied minimal due process of law"). To hold otherwise, would be to totally ignore the probationer's right of confrontation and cross-examination guaranteed by *Morrissey* and *Gagnon* as one of the minimal requirements of due process.

 Much of the testimony of Deputy Rathsgeber and Officer Kerr was unquestionably hearsay; some of it was double and triple hearsay. Its admission was error. No effort was made to explain the absence of the witnesses who could testify, first hand, as to the automobile purchase or as to the civil action. The testimony was also unreliable,[15] coming from persons whose capacity with Brown's Castle Toyota, on the one hand, and whose role in the civil action, on the other, were unknown. And appellant could not cross-examine and confront these witnesses. Only police officers testified and, then, only as to what they had been told by persons not in court.

 We cannot leave this issue without making known our disapproval of the State's conduct in these proceedings. Our focus is upon its attempt to use these violation proceedings as a substitute for a criminal prosecution.[16] We suspect that this approach was chosen because probation violation proceedings require less by way of proof and formal procedures than do criminal trials. When the State "stetted" the charges arising out of the automobile purchase

---

**15.** The documentary evidence was not, in and of itself unreliable. It may well be one of the "substitutes for live testimony" referred to in Gagnon. Here, however, aside from the question as to the adequacy of its authentication, the documents alone would not have sufficed to prove criminal conduct.

**16.** Before trial, the assistant state's attorney characterized the use of the facts underlying the "stetted" charge in the probation revocation proceedings as "bring[ing] that case, at least technically, back off the stet docket into the facts of this case ..."

from Brown's Castle Toyota, it proceeded to allege the underlying facts as a basis for a charge of violation of probation. We suspect that the State had no intention of proceeding with those criminal charges, either because it could not prove them or it did not wish to invest the time or effort to do so.[17] The State is required to be fair. Fundamental fairness requires that, if the State does not intend to proceed criminally or is unable to prove the criminal charges, it should not proceed in another forum where less is required.[18] We held in *State v. Weaver, supra* that a stet may not be used to circumvent Maryland Rule 746. Similarly, we hold that violation of probation proceedings may not be used to circumvent the burden of proof placed upon the State in criminal trials. *See Dean v. State, supra.*

It remains for us to determine if the error was harmless.

▮▮ In addition to the evidence just discussed, there was evidence that appellant failed to pay the costs in both cases and restitution in case No. 8891 and a certified record of a subsequent conviction. Judge Whitfill relied on the Brown's Castle Toyota transaction, appellant's failure to pay costs and appellant's subsequent conviction, to justify his finding of violation. Judge Close, on the other hand, relied solely upon the subsequent conviction. Therefore, as to Judge Close, appellant's arguments that his probation was erroneously revoked lack merit. With this in mind, we will consider appellant's arguments only as they relate to Judge Whitfill's findings.

---

17. Appellant, personally and through counsel, noted his desire to have the case tried and his intention to request that the case be removed from the "stet" docket. He apparently agreed to the "stet" of the charge initially.

18. We do not suggest that a charged, but untried, crime cannot be the basis for a probation revocation. Nor do we suggest that, if the State proceeds on that basis, it cannot thereafter stet or otherwise abort the untried charge. The circumstances then existing would, of course, control.

 Appellant argues that Judge Whitfill made an alternative holding, i.e., that appellant either had the money to pay the costs or engaged in criminal conduct, which is an insufficient basis for revocation of probation, as well as a denial of due process. We agree with the State that appellant has taken the remarks out of context. Judge Whitfill clearly and unequivocally found that appellant had the ability to pay.[19] Moreover, there was evidence presented by the probation agent which, if believed, supported this finding. The agent testified that appellant told him that he had inherited property from his grandfather so that he could easily pay in accordance with the payment schedule agreed upon. That he did not do so does not in any way render erroneous Judge Whitfill's finding that appellant had the ability to pay, but did not.

 Appellant's contention that there was no factual basis for the revocation for failure to pay is likewise without merit. The burden rests with appellant to prove that his failure to pay was not willful, but resulted from conditions beyond his control, *Humphrey v. State*, 290 Md. 164, 428 A.2d 440 (1981). On this record, appellant has failed to meet that burden. Moreover, the testimony of the probation agent, just referred to, amply supports Judge Whitfill's conclusion.

 *Turner v. State*, 61 Md.App. 1, 484 A.2d 641 (1984), *cert. petition pending*, is dispositive of appellant's argument that Judge Whitfill exceeded his authority in revoking his probation for failure to pay court costs. We, there, held that costs could be imposed as a condition of probation. It follows that failure to pay costs is a violation of probation. This argument lacks merit.

 Appellant's argument that his probation may not be revoked on the basis of a subsequent conviction pending on

---

**19.** Judge Whitfill at a prior hearing had also determined that appellant had the ability to pay. We merely point out that appellant does not appear to contest that finding.

appeal at the time of the revocation hearing, overlooks *Hutchinson v. State,* 292 Md. 367, 438 A.2d 1335 (1982). Although *Hutchinson* was a divided court, its holding, that a subsequent conviction, pending on appeal, can be the basis for a revocation of probation, is binding on this court.

██ Next the argument relating to the possibility that the subsequent conviction, which was pending on appeal, might be reversed by the appellate court is moot. This court, in *Fuller v. State,* (No. 1224, September Term, 1984, filed April 22, 1985),[20] a per curiam unpublished opinion, affirmed appellant's conviction in case No. 9523. *See* Maryland Rule 1092 c.

We conclude that, as to case No. 8891, Judge Close having relied only on the subsequent conviction, the error of admitting the hearsay testimony was harmless error. Judge Close did not abuse his discretion. *Coles v. State, supra, Edwardsen v. State,* 220 Md. 82, 151 A.2d 132 (1959), *Herold v. State,* 52 Md.App. 295, 449 A.2d 429 (1982). We find otherwise as to case No. 8836. Judge Whitfill gave three reasons for revoking appellant's probation. One of those reasons related to the transaction involving Brown's Castle Toyota. As we have seen, the admission of the hearsay evidence concerning that transaction was error. Because the remaining reasons for revoking probation have been found adequate, we will remand for further proceedings in conformity with this opinion. *Costa v. State,* 58 Md.App. 474, 473 A.2d 942 (1984). *See also Dean, supra.* On remand, Judge Whitfill should determine whether, in light of our decision respecting the Brown's Castle Toyota transaction, appellant's probation should be revoked.

6.

Finally, appellant complains that neither he nor his attorney was permitted to speak in mitigation of sentence. He

---

**20.** Appellant has filed, pro se, a supplemental brief advising us that he has filed a petition for writ of certiorari with the Court of Appeals. The filing of that petition does not affect the result we reach here.

correctly points out that "both judges rendered their factual findings and, in the very next breath, reimposed the original sentences." He urges vacation of the sentences and remand for resentencing.

█ The State, relying on *Logan v. State,* 289 Md. 460, 425 A.2d 632 (1981), responds that appellant did not object at the revocation hearing and therefore waived his right of allocution. The State also argues, relying on *Turner v. State,* 61 Md.App. 1, 484 A.2d 641 (1984), that revocation of probation and reimposition of sentence is merely the withdrawal of a previously extended favorable treatment, with the result, presumably, that the right of allocution does not apply to probation violation proceedings.

Maryland Rule 4–342(d) provides:

Before imposing sentence, the court shall afford the defendant the opportunity, *personally and through counsel,* to make a statement and to present information in mitigation of punishment. (emphasis added)

The requirements of this Rule are mandatory, *Kent v. State,* 287 Md. 389, 412 A.2d 1236 (1980), *Lyles v. State,* 63 Md.App. 376, 492 A.2d 959 (1985), and are applicable to probation violation proceedings. *Sellman v. State,* 47 Md. App. 510, 423 A.2d 974 (1981). Violation of the Rule requires that the sentence be vacated and the case remanded for resentencing. *Kent v. State, supra.*

█ Unlike in *Logan v. State, supra,* neither Judge Whitfill nor Judge Close afforded appellant or his counsel the opportunity to speak in mitigation. Nor did they ask his counsel, in appellant's presence, if appellant wished to be heard in mitigation. The failure to afford appellant his right of allocution was error. Resentencing is required.

FINDING OF VIOLATION IN CASE NO. 8891 AFFIRMED; SENTENCE VACATED AND CASE REMANDED FOR FURTHER PROCEEDINGS PURSUANT TO THIS OPINION.

SENTENCE IN CASE NO. 8836 VACATED AND CASE REMANDED TO THE CIRCUIT COURT FOR HARFORD

**358**

COUNTY, WITHOUT AFFIRMANCE OR REVERSAL, FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY APPELLANT, ONE–HALF BY HARFORD COUNTY.