511 A.2d 1128

**Jerome Edwin CHASE, Jr.**

v.

**STATE of Maryland.**

**No. 1616, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

July 15, 1986.

Certiorari Granted Nov. 10, 1986.

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Ronald M. Levitan, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, Arthur A. Marshall, Jr., State's Atty. for Prince George's County and William T. Shockley, Asst. State's Atty. for Prince George's County, on brief, Upper Marlboro), for appellee.

Argued before WILNER, ROBERT M. BELL and WEN-NER, JJ.

WILNER, Judge.

Under current Constitutional doctrine, evidence seized by a policeman without a warrant and in violation of a person's Fourth Amendment rights ordinarily may not be used by the State to convict the person of a criminal offense. The principal question in this appeal is whether such evidence

may be used in a probation revocation proceeding for the purpose of showing that the person has violated a condition of his probation. We are also asked to consider whether the record fails to show that appellant was present at his revocation hearing and that he waived certain fundamental rights, whether the proceeding itself was fundamentally unfair, and whether the new sentence order by the court was illegal.

## I. *The Facts*

On May 17, 1983, appellant was convicted by the Circuit Court for Prince George's County of robbery. He was sentenced to ten years in prison, all but 55 days of which were suspended in favor of five years probation. A year later, he was found to have violated certain conditions of his probation, whereupon the court "reimposed" the ten-year sentence, gave credit for 250 days served, and again suspended execution of the balance in favor of five years probation.

On January 9, 1985, appellant was arrested and charged with possession with intent to distribute marijuana and simple possession of that substance. The circumstances of the arrest, as summarized in appellant's brief, were as follows:

"Officers Pappas and Anderson were in an area of considerable drug trafficking when they saw Appellant signal to a motorist. The car stopped, and Appellant gave something to the driver who gave something back to him. The officers arrested Appellant, searched him, and recovered about 60 grams of marijuana, 125 small manila envelop[e]s, and $171 in cash. Officer Anderson did not know Appellant or his probationary status at the time of the arrest. The reason for the arrest was prosecution of Appellant for the apparent drug transaction."

In February, while the criminal case was pending, the State filed a petition to revoke appellant's probation, alleging a failure to "obey all laws." In June, the court in the criminal case found appellant's arrest to be unlawful—with-

out probable cause—and therefore suppressed the evidence recovered from him, whereupon, in August, the State dismissed the charges. It did not dismiss its petition to revoke appellant's probation, however.

Appellant appeared in court in the revocation case on September 13, 1985, and immediately moved to suppress the evidence taken at the time of his arrest or to dismiss the entire proceeding.[1] Applying a kind of balancing test, the court ultimately denied the motion, finding that "the probation process and community safety interests far outweigh any deterrent effect [of the exclusionary rule]" and thus concluding that "the exclusionary rule is not applicable to this violation of probation proceeding." Upon that ruling, appellant ultimately conceded that marijuana had indeed been taken from him. The court thereupon revoked his probation, once again "reimposed" the ten-year sentence, suspended all but four years, gave credit for 580 days of previous incarceration, and placed appellant on five years probation commencing upon his release from prison.

As noted, appellant raises four issues in this appeal. We shall deal with them in a slightly different order than presented:

## II. *Appellant's Presence*

There were two court proceedings in this case—one on September 13, 1985, which dealt almost exclusively with the suppression/dismissal issue, and one on December 5, 1985, which followed the court's ruling on that issue and dealt with the merits of the case. We are concerned here with the latter proceeding.

It is clear that appellant was not present in the courtroom at the very outset, his counsel indicating that he was in the

---

1. Appellant did not file a written motion. The transcript reveals that the issue he presented was "whether or not the Court will consider the evidence seized at the time of [appellant's] arrest as the basis of violation of [appellant's] probation." In its Memorandum and Order, the court viewed the motion as one "to dismiss the action." The discrepancy, if there is one, is unimportant in this case.

lock-up but had been summoned. It is also clear that at some undefined point in the brief proceeding appellant indeed was brought to the courtroom, for, on page six of the transcript, he responded to a question from the court. Unfortunately, it was between pages one and six that (1) counsel conceded that marijuana had been taken from appellant, (2) based on that concession the court found appellant in violation of his probation, and (3) argument was made as to disposition.

■ We start with the proposition that, as part of the minimal due process applicable to probation revocation proceedings, appellant had a right to be present at the hearing, to present evidence, and to confront witnesses against him. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Those rights can, of course, be waived. Even in an actual criminal trial, to which the full panoply of due process requirements pertain,

> "an effective waiver of the defendant's right to be present at every stage of the trial will not always require a personal waiver by the defendant. Where the right of confrontation is not implicated, and where there is involved no other right requiring intelligent and knowing action by the defendant himself for an effective waiver, a defendant will ordinarily be bound by the action or inaction of his attorney."

*Williams v. State,* 292 Md. 201, 219, 438 A.2d 1301 (1981).

■ No objection was made by counsel, and no objection was made by appellant himself, to the commencement of the proceeding without appellant being present. Indeed, as noted, it is not clear when appellant actually arrived, and it is therefore not clear that anything of significance occurred in his absence. His right of confrontation was certainly not transgressed, for no witnesses testified against him. It had already been determined that the evidence taken from him was admissible, and the most damaging thing that occurred was his counsel's stipulation that the substance seized was, in fact, marijuana. But that was never in dispute; indeed,

at the September 13 hearing, appellant stipulated that a bag containing 58.6 grams of marijuana had been seized.  On this record, we cannot find any basis for concluding that, to the extent appellant was, in fact, not present, his right of presence was not effectively waived.  He is free, of course, to establish a more persuasive record in post-conviction proceedings, if there is any basis for doing so.  *See Haley v. State,* 40 Md.App. 349, 392 A.2d 551, *cert. denied* 284 Md. 744 (1978).

## III.  *Suppression*

■  We turn now to the main issue:  did the court err in permitting the State to use the evidence unlawfully taken from appellant?  Preliminarily, it is important to note that, unlike *Cook v. State,* 281 Md. 665, 381 A.2d 671, *cert. denied* 439 U.S. 839, 99 S.Ct. 126, 58 L.Ed.2d 136 (1978), we are not dealing here with a situation in which the trial judge disagreed with an earlier ruling that the evidence was unlawfully taken.  The State and the court in this case accepted the earlier conclusion;  the issue, then, is not the correctness of the ruling or whether it is even open to reexamination, but simply whether the exclusionary rule flowing from it is or should be extended to this proceeding.

### (a)

When, in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the Supreme Court discarded *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), and made the exclusionary rule fashioned in *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), a Constitutional doctrine applicable to the States, it spoke in rather dogmatic terms.  Without the sanction of the exclusionary rule, it said, "the freedom from state invasions of privacy would be so ephemeral and so neatly severed from its conceptual nexus with the freedom from all brutish means of coercing evidence as not to merit this Court's high regard as a freedom 'implicit in the concept of ordered liberty.' "  367 U.S. at 643, 81 S.Ct. at 1685.  Thus,

it held that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." *Id.*

The law, of course, has not been static in this area since 1961. Even before *Mapp*, the Court had viewed the exclusionary rule as a deterrent, rather than a redressive measure. In *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960), it said that the purpose of the rule "is to deter—to compel respect for the constitutional guaranty in the only effective available way—by removing the incentive to disregard it." Upon that rationale, and despite the broad doctrinal language in *Mapp*, the Court, while periodically reaffirming the need for and continued existence of the exclusionary rule in Fourth Amendment cases, eventually began to open some holes in the Constitutional net it had thrown over improperly seized evidence. Thus, in *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974), the Court observed:

> "Despite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons. As with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served."

Two years later, the Court began to subject the rule—or at least proposed extensions of it beyond the criminal trial itself—to a kind of cost-benefit analysis. In *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), for example, the Court permitted evidence unlawfully seized by State authorities to be used by the Internal Revenue Service in a civil tax proceeding. "[T]he additional marginal deterrence provided by forbidding a different sovereign from using the evidence in a civil proceeding," the Court said at 453–54, 96 S.Ct. at 3031–32, "surely does not outweigh the cost to society of extending the rule to that situation." (Footnote omitted.) Primarily on that basis—

that exclusion of the evidence in that situation "has not been shown to have a sufficient likelihood of deterring the conduct of the state police so that it outweighs the societal costs imposed by the exclusion" (*id.*, 454, 96 S.Ct. at 3032)— the Court found no justification for extending the rule.

The same kind of analysis, and language, was used in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), decided the same day as *Janis.* The question there was whether, in a Federal *habeas corpus* proceeding, the court should relitigate whether evidence used to obtain a conviction in State court was unlawfully seized when the petitioner had a fair opportunity to litigate that issue in the State court. Quoting in part from *Calandra,* the Court observed at 486–87, 96 S.Ct. at 3048–49 that,

> "[D]espite the broad deterrent purpose of the exclusion-ary rule, it has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons. As in the case of any remedial device, 'the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served."

Later, but in the same vein, it noted, at 490–91, 96 S.Ct. at 3050–51:

> "Application of the rule thus deflects the truthfinding process and often frees the guilty. The disparity in particular cases between the error committed by the police officer and the windfall afforded a guilty defendant by application of the rule is contrary to the idea of proportionality that is essential to the concept of justice. Thus, although the rule is thought to deter unlawful police activity in part through the nurturing of respect for Fourth Amendment values, if applied indiscriminately it may well have the opposite effect of generating disre-spect for the law and administration of justice."

(Footnotes omitted.)

This balancing analysis remains an integral part of the decisional law in this area. It was articulated again in

*United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), where the Court actually retracted the exclusionary rule, withdrawing its application to evidence obtained in reasonable reliance on a search warrant issued by a neutral magistrate but later found to be unsupported by probable cause. At 907–08 of 468 U.S. at 3413 of 104 S.Ct., the Court pointed out:

"The substantial social costs exacted by the exclusionary rule for the vindication of Fourth Amendment rights have long been a source of concern. 'Our cases have consistently recognized that unbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury.' .... An objectionable collateral consequence of this interference with the criminal justice system's truth-finding function is that some guilty defendants may go free or receive reduced sentences as a result of favorable plea bargains. Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system."

(Citations omitted; footnote omitted.)

In *Logan v. State,* 289 Md. 460, 425 A.2d 632 (1981), the Court of Appeals applied the *Calandra* approach in declining to extend the exclusionary rule to sentencing proceedings. The fruits of evidence obtained in violation of the Fourth Amendment could, it held, be considered by a court, after conviction, in determining sentence. In adopting that approach, the Court quoted with approval from *United States v. Lee,* 540 F.2d 1205, 1211 (4th Cir.), *cert. denied* 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976):

" '[I]f the exclusionary rule were extended to sentencing in the ordinary case, its additional deterrent effect would be so minimal as to be insignificant. Generally, law enforcement officers conduct searches and seize evidence for purposes of prosecution and conviction—not for the purpose of increasing a sentence in a prosecution already

pending or one not yet begun. If they are to be deterred from official lawlessness, it would seem obvious that the only effective deterrence is the threat that the prosecution arising out of the specific search and seizure in which they acted illegally would be rendered ineffective. The additional threat that a future sentence might be less severe because they acted unlawfully can be predicted to have little practical effect to accomplish its main objective.' "

289 Md. at 485–86, 425 A.2d 632.

Though clearly indicating its agreement with the rationale in *Lee,* the Court pointedly expressed one caveat. The Court stated:

"We add, however, that where a showing has been made that judicial consideration at sentencing of illegally obtained evidence provides an incentive for illegal official activity, the exclusionary rule may well be applicable. Such incentive may be most readily shown by proof that the unconstitutionally obtained evidence was seized by police officials 'with a view toward enhancing the defendant's sentence.' "

289 Md. at 486, 425 A.2d 632 (quoting in part from *United States v. Lee, supra,* 540 F.2d at 1212).

This caveat is entirely consistent with the balancing approach. The decision not to apply the exclusionary rule in a given situation rests upon an assumption that the deterrent effect would either be of marginal significance or would be greatly outweighed by the detrimental effect. If that assumption turns out to be wrong, however—if the court has underestimated the deterrent effect of applying the rule (or the pernicious effect of not applying it)—the equation necessarily changes and a different result may be required.

### (b)

The precise question before us, though new in Maryland, has been considered by many courts throughout the country, most of which have applied a form of cost/benefit analysis and concluded that the Fourth Amendment exclusionary rule is inapplicable to probation revocation proceed-

ings.[2]   The reasoning employed in *Thompson v. United States*, 444 A.2d 972 (D.C.1982), is illustrative.   A probation revocation proceeding, the Court noted, is not a criminal prosecution, but is "more in the nature of an administrative hearing intimately concerned with the probationer's rehabilitation." *Id.*, 974 (quoting *Short v. United States*, 366 A.2d 781, 785 (D.C.1976)).   The decision to revoke probation is a discretionary one, and, in making that decision, the court must balance the competing interests of the community in safety with the rehabilitative goals of probation.   To do that properly, "it is extremely important that *all reliable* evidence shedding light on the probationer's conduct be available during probation revocation proceedings." 444 A.2d at 974 (quoting *United States v. Winsett*, 518 F.2d 51, 55 (9th Cir.1975)) (emphasis in original).   Thus:

"In determining whether to apply the exclusionary rule to probation revocation proceedings we must weigh the

---

**2.**   *See United States v. Bazzano,* 712 F.2d 826 (3d Cir.1983), *cert. denied* 465 U.S. 1078, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984); *United States v. Frederickson,* 581 F.2d 711 (8th Cir.1978) (per curiam); *United States v. Winsett,* 518 F.2d 51 (9th Cir.1975); *United States v. Farmer,* 512 F.2d 160 (6th Cir.), *cert. denied* 423 U.S. 987, 96 S.Ct. 397, 46 L.Ed.2d 305 (1975); *United States v. Brown,* 488 F.2d 94 (5th Cir.1973) (per curiam); *United States v. Hill,* 447 F.2d 817 (7th Cir.1971); *State v. Alfaro,* 623 P.2d 8 (Ariz.1980); *Harris v. State,* 606 S.W.2d 93 (Ark. App.1980); *People v. Rafter,* 41 Cal. App. 3d 557, 116 Cal.Rptr. 281 (1974) (per curiam); *People v. Atencio,* 525 P.2d 461 (Colo.1974); *Thompson v. United States,* 444 A.2d 972 (D.C.1982); *People v. Dowery,* 20 Ill.App.3d 738, 312 N.E.2d 682 (1974), *aff'd* 340 N.E.2d 529 (Ill. 1975); *Dulin v. State,* 169 Ind.App. 211, 346 N.E.2d 746 (1976); *Kain v. State,* 378 N.W.2d 900 (Iowa 1985); *State v. Caron,* 334 A.2d 495 (Me.1975); *State v. Thorsness,* 528 P.2d 692 (Mont.1974); *Stone v. Shea,* 113 N.H. 174, 304 A.2d 647 (1973); *State v. Lombardo,* 306 N.C. 594, 295 S.E.2d 399 (1982); *State v. Nettles,* 287 Or. 131, 597 P.2d 1243 (1979); *State v. Spratt,* 120 R.I. 192, 386 A.2d 1094 (1978). *Compare United States v. Workman,* 585 F.2d 1205 (4th Cir.1978); *aff'd after remand* 617 F.2d 48 (4th Cir.1980); *but see Grimsley v. Dodson,* 696 F.2d 303 (4th Cir.1982). *See generally* Annot., *Admissibility, in state probation revocation proceedings, of evidence obtained through illegal search and seizure,* 77 A.L.R.3d 636 (1977 & Supp.1985); Annot., *Admissibility, in federal probation revocation proceedings, of evidence obtained through unreasonable search and seizure or in absence of Miranda warnings,* 30 A.L.R.Fed. 824 (1976 & Supp. 1985).

potential benefit—deterrence of police misconduct—which would result against the potential harm to the function of the probation and probation revocation system that would result from the exclusion of relevant evidence. *See United States v. Calandra, supra,* 414 U.S. at 349, 94 S.Ct. at 620. The majority of jurisdictions that have addressed this issue have concluded that the deterrence which would result from applying the exclusionary rule in this context is outweighed by the need of the sentencing court for full and accurate information, and hence have held the exclusionary rule inapplicable to probation revocation proceedings."

444 A.2d at 974.

A number of courts, including the *Thompson* Court, though generally declining to extend the exclusionary rule to revocation proceedings, have been reluctant to lay down an unconditional ruling in that regard. *Thompson* noted that:

"A number of courts have, however, held or suggested that under certain circumstances exclusion of unlawfully obtained evidence from a revocation hearing would be appropriate. Where, for example, illegal acts of a government agent were directed specifically at a probationer or shock the conscience the deterrent effect that exclusion of evidence would have outweighs the need of the sentencing court for full and reliable information."

444 A.2d at 975.

The articulation of the caveat has varied somewhat. The *Thompson* Court, for example, declined to extend the exclusionary rule "in the absence of egregious circumstances which warrant exclusion of illegally seized evidence from [revocation] proceedings." *Id.* In *United States v. Winsett, supra,* 518 F.2d 51, 54 n.5, the Court stated:

"[W]hen the police at the moment of search know that a suspect is a probationer, they may have a significant incentive to carry out an illegal search even though knowing that evidence would be inadmissible in any crimi-

nal proceeding. The police have nothing to risk: If the motion to suppress in the criminal proceedings were denied, defendant would stand convicted of a new crime; and if the motion were granted, the defendant would still find himself behind bars due to revocation of probation. Thus, in such circumstances, extension of the exclusionary rule to the probation revocation proceeding may be necessary to effectuate Fourth Amendment safeguards."

*See also United States v. Vandemark,* 522 F.2d 1019 (9th Cir.1975), giving special attention to whether the officer was aware of the defendant's status as a probationer.

Other courts have expressed the caveat in terms of an absence of police "harassment." *See United States v. Wiygul,* 578 F.2d 577 (5th Cir.1978) (per curiam); *United States v. Farmer,* 512 F.2d 160 (6th Cir.), *cert. denied* 423 U.S. 987, 96 S.Ct. 397, 46 L.Ed.2d 305 (1975). At least one court has used a "good faith" standard, declining to apply the exclusionary rule "at least where there has been a good faith effort to comply with the law." *Harris v. State,* 270 Ark. 634, 606 S.W.2d 93, 95 (1980).

To some extent, this is a matter of semantics, but, because of its obvious importance to the conduct of probation (and parole) proceedings, if there is to be a caveat, it should be clearly expressed and easy to administer.

We align ourselves with the majority of courts that have declined to extend in any general fashion the Fourth Amendment exclusionary rule to probation revocation proceedings. We agree, as a general proposition, that the deterrent effect of such an application will be minimal and that whatever marginal deterrent benefit might accrue would be far outweighed by the harmful effect of denying access to relevant information concerning a probationer's behavior.

We also have a caveat. We cannot permit the police to use this as an incentive to violate the Fourth Amendment, and, while we are confident that the police agencies in this State would not, as a matter of policy, act in any less

professional manner than they now do, we think the best way to deter individual violations is simply to apply the exclusionary rule upon a showing that the police did not act in good faith in effecting the search and seizure. The "good faith" standard is a familiar one generally in the law and, at least since *United States v. Leon*, has been found relevant and workable in the context of the exclusionary rule. It encompasses all aspects of the officer's actions— how egregious the violation was, whether the officer knew the person was on probation or parole, what the circumstances were that led to the seizure.

Because we accept as a general proposition that the exclusionary rule should *not* apply to revocation proceedings, we think that the burden should be on the defendant initially to produce evidence showing a lack of good faith. Otherwise, it would be a wooden affair with the officer routinely, in every case, simply attesting that he acted in good faith. Once the defendant produces sufficient credible evidence that the officer did not act in good faith, however, the State must rebut that evidence and bear the burden of persuading the court that there *was* good faith. That approach, we think, makes the rule both fair and workable.

### (c)

■ Applying these principles to the case at hand, we find no error in the court's ruling. Although appellant alluded at one point to the officers' having arrested him at gunpoint, we see nothing in the record indicating any lack of good faith.

### IV. *Fundamental Fairness*

■ Relying on language in *Fuller v. State*, 64 Md.App. 339, 495 A.2d 366 (1985), appellant contends that "[w]here an evidentiary ruling strikes at the heart of a prosecution, causing it to be abandoned, principles of fundamental fairness preclude use of that same evidence to incarcerate the defendant through the expediency of a less formal proceeding," namely a probation revocation hearing.

In *Fuller,* two police officers had been permitted to testify at Fuller's probation revocation hearing as to transactions and events underlying a "bad check" charge, which had been "stetted," and of which they had no firsthand knowledge. Analyzing a probationer's right to confrontation and to cross-examine adverse witnesses, we held that "in probation revocation proceedings due process minimally requires that when criminal conduct for which, as here, a probationer had not been tried, is alleged as the basis for the probation revocation, hearsay evidence to prove the violation is inadmissible unless the witnesses to such conduct are unavailable or the evidence is otherwise shown to be reliable." 64 Md.App. at 352, 495 A.2d 366.

We further expressed "disapproval" with the State's conduct in *Fuller* because we believed that it had attempted to use the probation revocation proceedings as a substitute for a criminal prosecution. 64 Md.App. at 353, 495 A.2d 366. Suspecting that, from the outset, the State had no intention of proceeding with the "bad check" charge, either because it could not prove it or did not wish to invest the time or effort to do so, we stated that "[f]undamental fairness requires that, if the State does not intend to proceed criminally or is unable to prove the criminal charges, it should not proceed in another forum where less is required." *Id.* at 354, 495 A.2d 366 (footnote omitted).

The circumstances existing in the case at hand in no way evidence an attempt by the State to use the probation revocation proceedings as a substitute for the underlying criminal proceedings. In fact, in the instant case the petition for violation of appellant's probation was filed just shortly after appellant's arrest, well before the granting of his motion to suppress on the underlying charge, which prompted those charges to be *nol prossed.*

## V.  *Sentence*

Appellant lastly complains about the five-year probationary period commencing upon his release from prison. He points out that he has already served 408 days of probation

and that the maximum period of probation allowed by law is five years. *See* Md. Code Ann. art. 27, §§ 641A(a) and 642. The State concedes the point, and so we shall remand the case with the direction that the probationary period be reduced by 408 days. Md. Rule 1071 b.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR MODIFICATION OF SENTENCE IN ACCORDANCE WITH THIS OPINION; COSTS TO BE PAID THREE–FOURTHS BY APPELLANT, ONE–FOURTH BY PRINCE GEORGE'S COUNTY.