BILTMORE BLACKMAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 21436-84.          Filed March 24, 1987.

Biltmore Blackman, pro se.
*C. Ellen Pilsecker*, for the respondent.

SIMPSON, *Judge*: The Commissioner determined a deficiency of $22,737.38 in the petitioner's Federal income tax for 1980 and additions to tax of $663.25 under section 6651(a) of the Internal Revenue Code of 1954,[1] and of

---

[1]All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue, unless otherwise indicated.

$1,136.87 under section 6653(a). After concessions, the issues remaining for decision are: (1) Whether the petitioner is entitled to a deduction for the loss of his residence by fire when that fire was started by him; (2) whether the petitioner's failure to file a timely Federal income tax return was due to reasonable cause; and (3) whether the petitioner's underpayment of taxes was due to negligence under section 6653(a).

## FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

At the time of the filing of the petition in this case, the petitioner, Biltmore Blackman, resided in Billerica, Massachusetts. He and his wife filed their joint Federal income tax return for 1980 on April 28, 1981, with the Internal Revenue Service Center, Atlanta, Georgia.[2]

The petitioner's employer transferred him from Baltimore, Maryland, to South Carolina. The petitioner relocated his wife and children to South Carolina. Mrs. Blackman was dissatisfied with South Carolina and returned, with the couple's five children, to Baltimore. During the 1980 Labor Day weekend, the petitioner returned to Baltimore, hoping to persuade his wife to give South Carolina another chance. When he arrived at his Baltimore home, he discovered that another man was living there with his wife. The neighbors told the petitioner that such man had been there on other occasions when the petitioner had been out of town on business.

On September 1, 1980, the petitioner returned to his former home to speak to his wife. However, Mrs. Blackman was having a party; her guests refused to leave despite the petitioner's request that they do so. He returned to the house several times, repeating his request, and emphasizing it by breaking windows. Mrs. Blackman's guests did not leave the house until about 3 a.m., September 2, 1980.

Later, on September 2, 1980, the petitioner again went to his former home. He wanted to ask his wife whether she wanted a divorce. They quarreled, and Mrs. Blackman left

---

[2]Mrs. Blackman is not a party to this action. The couple is now divorced.

the house. After she left, the petitioner gathered some of Mrs. Blackman's clothes, put them on the stove, and set them on fire. The petitioner claims that he then "took pots of water to dowse the fire, put the fire totally out" and left the house. The fire spread, and the fire department was called. When the firefighters arrived, they found some of the clothing still on the stove. The house and its contents were destroyed.

The petitioner was arrested later that day and charged with one count of Setting Fire while Perpetrating a Crime, a violation of Md. Ann. Code art. 27, sec. 11 (Repl. vol. 1982), and one count of Destruction of Property (Malicious Mischief), a violation of Md. Ann. Code art. 27, sec. 111 (Repl. vol. 1982). The arson charge was based on the allegation that the petitioner "had set fire to and burned * * * [the house] while perpetrating the crime of Destruction of Property" and the malicious destruction charge was based on the allegation that he "did willfully and maliciously destroy, injure, deface and molest clothing, the property of" Mrs. Blackman. The petitioner pleaded not guilty to both charges. On November 5, 1980, by order of the District Court of Baltimore County, the arson charge was placed on the "stet" docket. The petitioner was ordered to serve 24 months unsupervised probation without verdict on the malicious destruction charge.

The petitioner filed a claim for the fire damage with his insurer, State Farm Fire & Casualty Co. of Baltimore, Maryland. The company refused to honor the claim due to the cause of the fire.

On his 1980 Federal income tax return, the petitioner deducted as a casualty loss $97,853 attributable to the destruction of his residence and its contents. In his notice of deficiency, the Commissioner disallowed the deduction and made other adjustments. He now concedes those other adjustments and does not dispute the amount of the casualty loss, if the loss is allowable. The Commissioner also determined that the petitioner is liable for the additions to tax under section 6651(a) for failure to file a timely return and under section 6653(a) for negligence.

OPINION

The primary issue for our decision is whether the petitioner is allowed to deduct the loss resulting from the fire started by him. Section 165(a) allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." Section 165(c)(3) provides, in pertinent part, that in the case of an individual, the deduction allowed in subsection (a) is to be limited to "losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft." The Commissioner concedes that the petitioner sustained a loss through fire. However, the Commissioner argues that the petitioner intentionally set the fire which destroyed his home in violation of Maryland's public policy, that allowing the deduction would frustrate that public policy, and that, therefore, under the doctrine of *Commissioner v. Heininger*, 320 U.S. 467 (1943), and subsequent cases, the petitioner is not entitled to a deduction for the damage caused by his fire.

Courts have traditionally disallowed business expense and casualty loss deductions under section 162 or 165 where national or State public policies would be frustrated by the consequences of allowing the deduction. *Commissioner v. Heininger, supra.* "[T]he test of non-deductibility always is the severity and immediacy of the frustration resulting from allowance of the deduction." *Tank Truck Rentals v. Commissioner*, 356 U.S. 30, 35 (1958). "From the cases, it is clear that the question of illegality to frustrate public policy is, in the last analysis, *one of degree, to be determined from the peculiar facts of each case.*" *Fuller v. Commissioner*, 213 F.2d 102, 106 (10th Cir. 1954), affg. 20 T.C. 308 (1953); emphasis supplied. In examining the facts of each case, courts have examined both the taxpayer's conduct and the policy his conduct is said to frustrate. See, e.g., *Commissioner v. Heininger, supra; Tank Truck Rentals v. Commissioner, supra; Holt v. Commissioner*, 69 T.C. 75 (1977), affd. per curiam 611 F.2d 1160 (5th Cir. 1980); *Mazzei v. Commissioner*, 61 T.C. 497 (1974); *Richey v. Commissioner*, 33 T.C. 272 (1959).

Conviction of a crime is not essential to a showing that the allowance of a deduction would frustrate public policy.

In *Richey v. Commissioner, supra,* and *Mazzei v. Commissioner, supra,* we denied theft loss deductions to two different taxpayers who were swindled by their co-conspirators in counterfeiting schemes. In *Richey,* we said the acts of the taxpayer constituted "an attempt to counterfeit, an actual start in the counterfeiting activity, and overt acts looking to consummation of the counterfeiting scheme." 33 T.C. at 276. In *Mazzei,* we said "The petitioner conspired with his covictim to commit a criminal act, namely, the counterfeiting of United States currency." 61 T.C. at 502. Neither of the taxpayers in *Richey* or *Mazzei* was charged with a crime. In *Wagner v. Commissioner,* 30 B.T.A. 1099 (1934), the Commissioner disallowed the taxpayer's deduction of losses which resulted from confiscation of the taxpayer's business. The taxpayer was alleged to have violated State usury statutes, but he was not arrested, nor were any charges filed against him. We upheld the disallowance of the loss deduction on the grounds that the taxpayer's business practices violated the policy expressed by the State lending and usury laws. 30 B.T.A. at 1105-1107. Similarly, in *Davis v. Commissioner,* 17 T.C. 549 (1951), the taxpayer was accused, by the SEC, of a violation of section 16(b) of the Securities Exchange Act of 1934. The SEC ordered the taxpayer to pay a corporation, of which the taxpayer was general counsel, the profits taxpayer had received from sales of the corporation's stock. The taxpayer was not formally charged with any crime. We upheld the Commissioner's disallowance of a deduction of the payment as a loss on the ground that allowing the deduction would frustrate the public policy expressed in section 16(b). 17 T.C. at 556.

Moreover, it is well settled that the negligence of the taxpayer is not a bar to the allowance of the casualty loss deduction. *Anderson v. Commissioner,* 81 F.2d 457, 460 (10th Cir. 1936); *Shearer v. Anderson,* 16 F.2d 995, 997 (2d Cir. 1927). On the other hand, gross negligence on the part of the taxpayer will bar a casualty loss deduction. *Heyn v. Commissioner,* 46 T.C. 302, 308 (1966). "Needless to say, the taxpayer may not knowingly or willfully sit back and allow himself to be damaged in his property or willfully

damage the property himself." *White v. Commissioner*, 48 T.C. 430, 435 (1967).

In our judgment, the petitioner's conduct was grossly negligent, or worse. He admitted that he started the fire. He claims that he attempted to extinguish it by putting water on it. Yet, the firemen found clothing still on the stove, and there is no evidence to corroborate the petitioner's claim that he attempted to dowse the flame. The fact is that the fire spread to the entire house, and we have only vague and not very persuasive evidence concerning the petitioner's attempt to extinguish the fire. Once a person starts a fire, he has an obligation to make extraordinary efforts to be sure that the fire is safely extinguished. This petitioner has failed to demonstrate that he made such extraordinary efforts. The house fire was a foreseeable consequence of the setting of the clothes fire, and a consequence made more likely if the petitioner failed to take adequate precautions to prevent it. We hold that the petitioner's conduct was grossly negligent and that his grossly negligent conduct bars him from deducting the loss claimed by him under section 165(a) and (c)(3).

In addition, allowing the petitioner a deduction would severely and immediately frustrate the articulated public policy of Maryland against arson and burning. Maryland's policy is clearly expressed. Article 27, section 11, of the Maryland Annotated Code (Repl. vol. 1982), makes it a felony to burn a residence while perpetrating a crime. The petitioner admits that he set fire to his wife's clothes, and he has not denied that the residence burned as a result of the fire started by him. The petitioner was charged with violating that section, but that charge was placed on the "stet" docket. As we understand Maryland practice, such action merely postponed any action on the charge. See Maryland Rule 4-248(a); *Fuller v. State*, 64 Md. App. 339, 495 A.2d 366 (1985); *State v. Weaver*, 52 Md. App. 728, 451 A.2d 1259 (1982). However, the mere fact that the petitioner was never brought to trial for burning the house does not foreclose a finding by this Court that the petitioner acted in violation of that policy. See *Richey v. Commissioner, supra*; *Mazzei v. Commissioner, supra*; *Wagner v. Commissioner, supra*; *Davis v. Commissioner, supra*. We are

mindful, also, that Maryland has an articulated public policy against domestic violence. We refuse to encourage couples to settle their disputes with fire. We hold that allowing a loss deduction, in this factual setting, would severely and immediately frustrate the articulated public policies of Maryland against arson and burning, and against domestic violence.

Two minor issues remain for our decision. The first is the Commissioner's determination that the petitioner is liable for the addition to tax under section 6651(a). Section 6651(a)(1) imposes a 5-percent addition for a failure "to file any return required * * * on the date prescribed therefor * * * , unless it is shown that such failure is due to reasonable cause and not due to willful neglect." The burden is on the petitioner to show that his failure to timely file returns was due to reasonable cause and not to willful neglect. *Rice v. Commissioner*, 14 T.C. 503 (1950).

The parties stipulated that the petitioner's 1980 return was filed on April 28, 1981. The petitioner claims that he executed a request for an extension of time to file, but he produced no evidence supporting such claim. He also claimed that his delay was due to his difficulty in obtaining Mrs. Blackman's signature, but he produced no details as to why he could not have secured her signature on a timely return. We hold that the petitioner has not carried his burden and that he is liable for the addition to tax under section 6651(a)(1).

The remaining issue concerns the addition, under section 6653(a), for negligence or intentional disregard of rules and regulations. The Commissioner argues that the petitioner is liable for the addition because he claimed a substantial deduction to which he was not entitled and that such a claim justifies imposing the addition. We cannot agree in this case. Under the circumstances of this case, it was not negligent for the petitioner to claim a deduction for his loss by fire. *Wofford v. Commissioner*, 5 T.C. 1152, 1166-1167 (1945). Imposition of the addition is therefore not warranted in this case.

*Decision will be entered under Rule 155.*